United States District Court
Southern District of Texas
**ENTERED**
January 12, 2023
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| WELL CELL GLOBAL LLC and WELL CELL SUPPORT LLC, § § § | |
| Plaintiffs, § § | |
| v. § § | CIVIL ACTION NO. H-22-3062 |
| SHAWN PAUL CALVIT, MARC PIERRE DESGRAVES IV, CHARLES ALEXANDER ELLIOTT, PATRICK DALE LELEAUX, M.D., INSULINIC OF LAFAYETTE LLC, INSULINIC OF HIALEAH LLC, INSULINIC OF HAWAII, LLC, INSULINIC OF GRETNA, LLC, and INSULINIC OF HAMMOND, LLC, § § § § § § § § § § § | |
| Defendants. § | |

**MEMORANDUM AND OPINION**

Certain defendants,[1] Shawn Paul Calvit, Marc Pierre Desgraves IV, Charles Alexander Elliot, Insulinic of Lafayette LLC, Insulinic of Hialeah LLC, and Insulinic of Hawaii LLC, have filed a notice of appeal, (Docket Entry No. 81), of the court's order of preliminary injunction and have moved to stay the order pending resolution of that appeal. (Docket Entry No. 80). The defendants have also moved to dismiss the complaint for lack of standing, lack of personal jurisdiction over two of the individual defendants, and for failure to state a claim. (Docket Entry Nos. 35, 78).[2] The plaintiffs oppose both motions. (Docket Entry Nos. 40, 87, 88). For the

---

[1] No appearance has yet been entered on behalf of Insulinic of Gretna, Insulinic of Hammond, or Dr. Patrick LeLeaux.

[2] The defendants filed their motion to dismiss, (Docket Entry No. 35), with respect to the original complaint. (Docket Entry No. 1). Well Cell filed its opposition to the motion, (Docket Entry No. 40), and then filed an amended complaint, which contained several new claims. (Docket Entry No. 43). The defendants filed a supplemental brief to their motion to dismiss addressing the claims added in the amended complaint. (Docket Entry No. 78). Well Cell filed its own supplemental briefing. (Docket Entry No. 87). Neither party contends that the filing of the amended complaint in this case should moot the original motion

following reasons, the motion to stay is denied, and the motion to dismiss is granted in part and denied in part.

## I.      The Applicable Legal Standards

### A.      Motion to Dismiss

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* At 678 (quoting *Twombly*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

"A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'"  *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555).  "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic

---

to dismiss, and both parties have addressed the additional claims.  The court therefore addresses the motion to dismiss and the parties' briefing as if done with respect to the amended complaint.

deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (alterations omitted) (quoting *Twombly*, 550 U.S. at 558).

### B.    Motion to Stay Pending Appeal

"'A stay is not a matter of right, even if irreparable injury might otherwise result.'   It is instead an exercise of judicial discretion, and the 'party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.'"  *Ind. State Police Pension Trust v. Chrysler, LLC*, 556 U.S. 960, 961 (2009) (quoting *Nken v. Holder*, 556 U.S. 418, 427 (2009)).   "A stay is an 'intrusion into the ordinary processes of administration and judicial review . . . . The parties and the public, while entitled to both careful review and a meaningful decision, are also generally entitled to the prompt execution of [final] orders . . . ."  *Nken*, 556 U.S. at 427 (quoting *Va. Petrol. Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958) (per curiam)).

A court decides whether to grant a stay pending appeal based on the following factors: "'(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'"  *Chafin v. Chafin*, 568 U.S. 165 (2013) (quoting *Nken*, 556 U.S. at 434); *Moore v. Tangipahoa Parish Sch. Bd.*, 507 F. App'x 389, 392 (5th Cir. 2013) (per curiam) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).   "The first two factors of the . . . standard are the most critical." *Nken*, 556 U.S. at 434.  The movant has the burden to satisfy the four factors.  *See Ruiz v. Estelle*, 666 F.2d 854, 856 (5th Cir. 1982).

The movant must make "'a strong showing that [it] is likely to succeed on the merits.'" *Moore*, 507 F. App'x at 392–93 (alteration in original) (quoting *Hilton*, 481 U.S. at 776).  "[T]he

movant need not always show a 'probability' of success on the merits." *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981). "[I]nstead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Id*.; *see also Nken*, 556 U.S. at 434 (noting that the movant must show "[m]ore than a mere possibility of relief"); *Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 23 (5th Cir. 1992) ("[P]resentation of a substantial case is only the threshold requirement. That threshold step alone is not sufficient . . . . [A] 'serious legal question' . . . [and] demonstrat[ing] a heavy weight of equity in favor of the stay [is also required].").

## II.  Analysis of the Motion to Dismiss

### A.  Rule 12(b)(1)—Lack of Subject-Matter Jurisdiction

The court analyzed Well Cell's standing to assert its patent and copyright claims in the memorandum granting Well Cell's motion for preliminary injunction. (*See* Docket Entry No. 76 at 8–11). Nothing in the parties' briefs on the defendants' motion to dismiss supports changing the court's analysis or conclusions. As the beneficial owner of the patents-in-suit, Well Cell has standing to assert its patent claims for injunctive relief. Well Cell does not have standing to assert its copyright claims, which are accordingly dismissed.

### B.  Rule 12(b)(2)—Lack of Personal Jurisdiction

The defendants argue that the court lacks personal jurisdiction over Marc Desgraves, IV, and Charles Elliot. Neither individual is a Texas resident. (Docket Entry No. 35 at 6–7). Well Cell does not dispute Desgraves and Elliot's citizenship but argues that the court may exercise specific personal jurisdiction over them because their alleged misappropriation of Well Cell's intellectual property caused harm to Well Cell in Texas. (Docket Entry No. 40 ¶ 27).

Well Cell bears the burden of establishing a prima facie case of personal jurisdiction over these defendants. *Pervasive Software, Inc. v. Lexware GmbH & Co*., 688 F.3d 214, 219 (5th Cir.

2012).  Due process permits the exercise of personal jurisdiction over a nonresident defendant when that defendant has "purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts'" with the forum state and the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)).  "The non-resident's purposeful availment must be such that the defendant should reasonably anticipate being haled into court in the forum state."  *Ruston Gas Turbines, Inc. v. Donaldson Co., In*c., 9 F.3d 415, 419 (5th Cir. 1993) (citation and internal quotation marks omitted).

Well Cell argues only for specific personal jurisdiction over the defendants.  With respect to specific personal jurisdiction, the inquiry "focuses on the relationship among the defendant, the forum, and the litigation."  *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (internal quotation marks and citation omitted); *Halliburton Energy Servs., Inc.* v. *Ironshore Specialty Ins. Co*., 921 F.3d 522, 539 (5th Cir. 2019) ("Specific jurisdiction applies when a non-resident defendant 'has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'"  (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co*., 253 F.3d 865, 868 (5th Cir. 2001))).

Under the "effects test," in certain circumstances, "an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct."  *Guidry v. U.S. Tobacco Co., Inc*., 188 F.3d 619, 628 (5th Cir. 1999) (citing *Calder v. Jones*, 465 U.S. 783, 789–90 (1984)).  The Fifth Circuit has clarified that the effects test "is not a substitute for a nonresident's minimum contacts that

demonstrate purposeful availment of the benefits of the forum state." *Allred v. Moore & Peterson*, 117 F.3d 278, 286 (5th Cir. 1997).  Additionally, "[f]oreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999) (citations omitted).

Well Cell alleges that Desgraves and Elliot, along with Shawn Calvit, are members of Insulinic Hawaii, LLC.   (Docket Entry No. 43 ¶¶ 10–12).  Well Cell also alleges that Desgraves and Elliot are members of other Insulinic clinics, (*id.* ¶ 55), and are alter-egos of those clinics. (*Id.*).  Well Cell alleges personal jurisdiction over Desgraves and Elliot "because they have committed acts directed at Texas that have caused tortious injury to Well Cell in Texas, specifically, misappropriation of Well Cell's intellectual property, with the knowledge that Well Cell would thereby be harmed."  (*Id.* ¶ 25).  The defendants' "tortious acts giving rise to this lawsuit have been directed at Texas and the harm to Well Cell have occurred and will continue to occur within Texas."  (*Id.*).

There are no allegations that Desgraves and Elliot received trade secrets or other intellectual property directly from Well Cell, or that they had any direct contact with Well Cell. Neither Desgraves nor Elliot had a contract with Well Cell.  Well Cell alleges that Desgraves and Elliot received trade secrets from Calvit, the principal of the Insulinic clinics, who entered into license agreements with Well Cell and who himself signed a nondisclosure agreement with Well Cell.  The misappropriation alleged against Desgraves and Elliot injured Well Cell in Texas, but Well Cell fails to allege that the misappropriation arises from Desgraves's or Elliot's Texas contacts.  *Cf. Wein Air*, 195 F.3d at 212 (finding specific personal jurisdiction over defendants with respect to fraud claim when the defendants directed letters, phone calls, and faxes to Texas containing fraudulent misrepresentations).

6

Desgraves and Elliot are not subject to personal jurisdiction in Texas.  While personal jurisdiction may be asserted over individuals in the same manner as their alter egos, *see Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 654 (5th Cir. 2002), Well Cell's allegations that Desgraves and Elliots are alter egos of the Insulinic clinics are conclusory.  The present record is insufficient to support personal jurisdiction over Desgraves and Elliot.

Desgraves and Elliot, and the claims against them, are dismissed.

### C.      Rule 12(b)(6)—Failure to State a Claim

The defendants move to dismiss the amended complaint on the basis that Well Cell fails to state any claims.

#### 1.      Patent Infringement

The defendants argue that Well Cell fails to state claims for patent infringement, because the allegations of infringement merely "parrot" the patent claims without alleging facts.  (Docket Entry No. 35 at 7).  The defendants also argue that the patents are invalid.  (*Id.* at 9–15).

To establish patent infringement, a party must show that the alleged infringer "without authority makes, uses, offers to sell, or sells any patented invention."  35 U.S.C. § 271(a).

> A determination of infringement involves two steps: First, the court determines the scope and meaning of the asserted patent claims. The court then compares the properly construed claims to the allegedly infringing device to determine whether all of the claim limitations are present, either literally or by a substantial equivalent.

*Innovention Toys, LLC v. MGA Ent., Inc.*, 637 F.3d 1314, 1318–19 (Fed. Cir. 2011).  "Direct infringement of a method claim requires all steps of the claimed method to be performed by or attributable to a single entity."  *LifeNet Health v. LifeCell Corp.*, 837 F.3d 1316, 1325 (Fed. Cir. 2016).

Well Cell alleges that:

> Defendants have and continue to infringe upon the 595 Patent and the 990 Patent by making, having made, using, selling, or offering for sale insulin infusion pumps,

7

kits, and/or IV tubing infusion cassettes in the United States and importing into the United States insulin infusion pumps and IV tubing infusion cassettes that embody or use the inventions claimed in the 595 Patent and the 990 Patent. The insulin infusion pumps and IV tubing infusion cassettes being utilized by Defendants infringe upon the 990 Patent because they deliver individualized intravenous exogenous insulin–based therapy for infusing insulin intravenously to a subject or a patient to improve impaired hepatic glucose processing. The insulin infusion pumps, kits and IV tubing infusion cassettes being utilized by Defendants infringe upon the 595 Patent because they utilize software that includes portable data storage in communication with a client device processor, which has computer instructions, a database of metabolic factors, a library of weight management protocols, a diabetic treatment model, and a library of care plan templates. The insulin infusion pumps, kits, and IV tubing infusion cassettes being utilized by Defendants infringe upon the 595 Patent because they contain individualized intravenous exogenous insulin-based therapy, including a blood glucose meter, a plurality of intravenous catheters fluidly engageable with a fluid source, and a plurality of metabolic enhancements.

(Docket Entry No. 43 ¶ 79). Well Cell alleges that the defendants knew that the pumps and other materials are "especially made or especially adapted for practicing the invention of the 595 Patent and the 990 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use." (*Id.* ¶ 81).

Contrary to the defendants' argument, (Docket Entry No. 35 at 8), these allegations sufficiently identify products and methods used by the defendants that infringe Well Cell's patents. After the licenses ended, Well Cell alleges that the materials it delivered to the defendants under the license agreements, and which the defendants have continued to use, embody its patented inventions. Well Cell also alleges that the defendants are using these materials to deliver Well Cell's patented therapeutic modality.

The defendants cite cases that primarily concern situations in which a competitor develops and offers for sale allegedly infringing products. Here, by contrast, Well Cell alleges that the defendants retained patented materials and methods obtained under the license agreement and continue to use those materials and practice those methods, infringing Well Cell's patents. Given the relationship of the alleged infringement to the license agreements between Well Cell and the

8

defendants, these allegations state a claim and put the defendants "on notice as to what [they] must defend." *Artrip v. Ball Corp.*, 735 F. App'x 708, 715 (Fed. Cir. 2018).

The defendants additionally argue that the asserted patents are invalid because they are drawn to ineligible subject matter and do not contain an inventive concept. Patent eligibility may be determined on a motion to dismiss "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

Patent-eligible subject matter includes "new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 573 U.S. 208, 216 (2014) (quoting reference omitted). *Alice* creates a two-step framework for analyzing whether claims are patentable. First, the court determines "whether the claim at issue is directed to a judicial exception, such as an abstract idea." *McRO, Inc. v. Bandai Namco Games Am. In*c., 837 F.3d 1299, 1312 (Fed. Cir. 2016) (internal quotation marks and citation omitted). "The abstract idea exception prevents patenting a result where 'it matters not by what process or machinery the result is accomplished.'" *Id.* (quoting *O'Reilly v. Morse*, 56 U.S. (15 How.) 62, 113, (1854)). "[T]he claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). If the court finds that the claims are directed toward an excluded subject matter, such as an abstract idea, the court proceeds to step two, the "search for an inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." *Alice*, 573 U.S. at 217–18 (internal quotation marks omitted).

"Abstract idea," like other exceptions to patentability, is not concretely defined, because "all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo Collaborative Servs. v. Prometheus Labs., Inc*., 566 U.S. 66, 71 (2012). The Federal Circuit has provided guidance:

> As to the abstract idea exception, no single, hard-and-fast rule that automatically outputs an answer in all contexts exists because there are different types of abstract ideas, including (1) methods of organizing human activity, such as fundamental economic practice[s]; (2) claims to mental processes, even if performed on a computer rather than in the human mind; and (3) claims to results rather than to a means of achieving the claimed result.

*In re Killian*, 45 F.4th 1373, 1381–82 (Fed. Cir. 2022) (internal citations and quotation marks omitted). Restating and elaborating on the *Alice* test, *Killian* directs courts to "look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter." *Id.* (quoting *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016)). Once the "focus" is identified, the court considers whether the claims "fall into a familiar class of claims directed to a patent-ineligible concept." *Id.* (internal quotation marks omitted). The classes of claims include, as the defendants charge, those that "can be performed in the human mind, or by a human using pen and paper, and the elements in the claim do not contain a sufficient inventive concept under [*Alice*] step two." *Id.* (internal quotation marks omitted). Although directed to an abstract idea, "processes that automate tasks that humans are capable of performing are patent eligible if properly claimed." *Bandai Namco*, 837 F.3d at 1313.

As explained in *Killian*, processes may be claimed if they contain an inventive concept. An "inventive concept" includes methods that "improve[] an existing technological process," or claims that "recite a specific, discrete implementation of the abstract idea." *In re Killian*, 45 F.4th at 1382. An abstract idea implemented on "generic computer components, without providing a

specific technical solution," does not satisfy the step two requirement of an "inventive concept." *Id.*

The defendants argue that the '595 Patent is directed to the "abstract idea of a 'kit' of interrelated parts that when assembled provide a computerized process for pulling together and analyzing patient data to enable a client or physician to make changes to a treatment regimen." (Docket Entry No. 35 at 11).  Similarly, the "focus" of the '990 Patent, the defendants argue, "merely uses a computer processor as a tool to compile patient data and compare measured patient data against models of therapeutic information and thereby make changes to a treatment regimen." (*Id.* at 13).  Well Cell does not concede that its patents are directed to abstract ideas, and argues that, even if they are, they contain inventive concepts.

The '595 Patent claims a "kit for individualized intravenous exogenous insulin-based therapy to improve cellular ATP function comprising" various elements.  (Docket Entry No. 35-1 at 37, col. 32:59–60).  These elements include "a blood glucose meter," "an intravenous catheter," "an administrative processor," "measurable metabolic factors," "portable data storage," and "a library of weight management protocols."  (*Id.* at 37–38, col. 32:61–33:29).  Dependent claims specify that the kit comprises, for example, "computer instructions in the portable data storage to instruct the client device processor to use a homeostatic model to identify an insulin sensitivity factor of a subject," (*id.* at 39, col. 36:11–16); that the "individualized intravenous exogenous insulin-based therapy . . . [includes] at least one of the plurality of metabolic enhancements is a methylcobalamin, a pyridoxal-5 phosphate, a 5-MTHF, an alpha lipoic acid, a NADH, a coenzyme Q10, a chromium picolinate, and a N-Acetyl cysteine, and a vitamin D3, (*id* at col 36:28–33); and other limitations.

The '595 Patent is directed toward the treatment of metabolic disorders, which is an abstract idea. Independent claim 1 describes the components of the kit. Those components are described generically. Nevertheless, the '595 Patent purports to improve upon existing methods to treat metabolic disorders through its particular "implementation of an abstract idea." *In re Killian*, 45 F.4th at 1382. The '595 Patent arguably contains an inventive concept. Whether this assessment of the '595 Patent is correct will be determined later in these proceedings, after the parties have had an opportunity to clarify the claims of the '595 Patent. *See MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379 (Fed. Cir. 2019) ("Determining patent eligibility requires a full understanding of the basic character of the claimed subject matter." (citing *Bancorp Servs., LLC v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012))). The present record is insufficient for the court to rule that the '595 Patent is invalid under § 101. *Cf. e-Numerate Sols., Inc. v. United States*, 149 Fed. Cl. 563, 577–59 (2020) (expressing concerns about resolving patent eligibility on a motion to dismiss); *see also Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1348 (Fed. Cir. 2018) (Plager, J., concurring in part and dissenting in part) (remarking on the conceptual difficulties of the *Alice* test).

As discussed above, the defendants are incorrect to assert that all actions that can be performed mentally or otherwise by human beings are unpatentable. (Docket Entry No. 35 at 13). Such abstract ideas may be patentable if they contain an "inventive concept." The '990 Patent purports to disclose an improved method of delivering intravenous exogenous insulin-based treatment. The present record shows that the '990 Patent, like the '595 Patent, precluding dismissal on the basis of patent invalidity.

### 2.    Trade-Secrets Claims

To show a violation of either the Defend Trade Secrets Act or Texas Uniform Trade Secrets Act, a party must show that "(1) the trade secret existed, (2) the trade secret was acquired through

a breach of a confidential relationship or discovered by improper means, and (3) the defendant used the trade secret without authorization from the plaintiff." *CAE Integrated, LLC v. Moov Techs., Inc*., 44 F.4th 257, 262 (5th Cir. 2022).  The Defend Trade Secrets Act requires a showing that the product was used in interstate commerce.  18 U.S.C. § 1836. Both statutes define trade secrets and misappropriation similarly.  *See* 18 U.S.C. § 1839; Tex. Civ. Prac. & Rem. Code § 134A.002.

At common law, "[m]isappropriation of trade secrets is shown by proof (1) that a trade secret existed; (2) that the trade secret was acquired through a confidential relationship; (3) that the defendant used the trade secret without authorization from the plaintiff; and (4) that the owner sustained damages."  *SPS Austin, Inc. v. Wilbourn*, No. 03-20-00054-CV, 2021 WL 5456659, at *9 (Tex. App.—Austin Nov. 19, 2021, no pet.) (citing *Cuidado Casero Home Health of El Paso, Inc. v. Ayuda Home Health Care Servs., LLC*, 404 S.W.3d 737, 744 (Tex. App.—El Paso 2013, no pet.). The existence of a trade secret is a question of fact.  *General Univ. Systems, Inc. v. Lee*, 379 F.3d 131, 150 (5th Cir.2004); *Zoecon Indus. v. Am. Stockman Tag Co*., 713 F.2d 1174, 1179 (5th Cir.1983) (whether "customer information is generally known or readily ascertainable is question of fact").

The defendants argue that Well Cell has not sufficiently identified the allegedly misappropriated trade secrets.  (Docket Entry No. 35 at 22).  Well Cell alleges that its trade secrets include "business contacts, including clients, physicians, vendors, investors, borrowers, lenders, agents, brokers, banks, lending corporations, buyers, and seller."  (Docket Entry No. 43 ¶ 91; *see also id.* ¶ 105).  Lists of business contacts may be trade secrets.  *See, e.g.*, *Guy Carpenter & Co., Inc. v. Provenzale*, 334 F.3d 459, 467 (5th Cir. 2003).  Well Cell further alleges that it "possesses trade secrets in the form of specialized medical training it has personally developed for the use of

its patent-protected medical technology." (Docket Entry No. 43 ¶ 94; *see also id.* ¶ 105). Well Cell alleges that it "has in place reasonable measures to protect the secrecy of its trade secrets," exemplified by the nondisclosure agreements it required certain defendants to sign. (*Id.* ¶ 95; *see also* ¶ 106). These trade secrets "were only shared with individuals under confidentiality agreements." (*Id.* at ¶ 95; *see also id.* ¶ 109). Well Cell alleges that the defendants misappropriated its trade secrets by using them to run the Insulinic clinics, which compete with Well Cell, without Well Cell's permission and in violation of the nondisclosure agreements. (*Id.* ¶ 97; *see also id.* ¶ 110). Well Cell alleges that the defendants' use of its trade secrets to run competing businesses damaged Well Cell financially. (*Id.* ¶¶ 101, 114).

Well Cell has stated a claim for misappropriation of trade secrets under state and federal law. Well Cell has identified two classes of trade secrets: alleged business contacts and the medical training in the patented kit and method. Well Cell has alleged that the defendants obtained those trade secrets through the parties' confidential business relationship. Finally, Well Cell sufficiently alleges that it has suffered damages from the defendants' use of those trade secrets without authorization. For the purposes of its federal claim, Well Cell has sufficiently alleged that its trade secrets are used in interstate commerce. (*See id.* ¶ 96).

### 3.      Texas Deceptive Trade Practices-Consumer Protection Act

Well Cell brings a claim under section 17.46 of the Texas Deceptive Trade Practices-Consumer Protection Act. Well Cell styles this claim as one for "unfair competition," (Docket Entry No. 43 ¶ 118), but section 17.46 is addressed to unfair trade practices with respect to consumers. To state a claim for a violation of the Texas DTPA, "a plaintiff must allege that: (1) he is a consumer; (2) the defendant engaged in false, misleading, or deceptive acts; and (3) these acts constituted a producing cause of the consumers damages." *Diez v. Google, Inc*., 831 F. App'x 723, 724 (5th Cir. 2020) (per curiam) (citing *Doe v. Boys Clubs of Greater Dall., Inc*., 907 S.W.2d

472, 478 (Tex. 1995)), *cert. denied*, 142 S. Ct. 139 (2021).  A "consumer" is "an individual, partnership, [or] corporation . . . who seeks or acquires by purchase or lease, any goods or services." TEX. BUS. & COM. CODE § 17.45(4).

Well Cell does not allege that it is a "consumer" under the DTPA with respect to the defendants.  The court dismisses Well Cell's DTPA claim.

### 4. Unfair Competition

"Unfair competition under Texas law is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters."  *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir.2000) (citations omitted).  "Unfair competition requires that the plaintiff show an illegal act by the defendant which interfered with the plaintiff's ability to conduct business.  Although the illegal act need not necessarily violate criminal law, it must be an independent tort."  *Boltex Mfg. Co., L.P. v. Galperti*, Inc., 827 F. App'x 401, 410 (5th Cir. 2020) (per curiam) (internal quotation marks and citation omitted) (citing *Taylor Pub.*, 216 F.3d at 486).  "Unfair competition" is not itself grounds for liability without "an independent substantive tort or other illegal conduct." *Schoellkopf v. Pledger*, 778 S.W.2d 897, 904–05 (Tex. App.—Dallas 1989, writ denied).

Well Cell has successfully pleaded claims for misappropriation of trade secrets and patent infringement.  Its unfair competition claim is sufficiently based on these independent substantive law violations to preclude dismissal.

### 5. Unjust Enrichment

"A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage."  *Elias v. Pilo*, 781 F. App'x 336, 338 (5th Cir. 2019) (per curiam) (quoting *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)).

Well Cell's claim for unjust enrichment is based on the defendants' infringement and misappropriation of Well Cell's intellectual property.  The Fifth Circuit has permitted unjust enrichment claims to proceed even when the plaintiffs had other theories of recovery available. *See Firebirds Int'l, LLC v. Firebird Rest. Group, LLC*, 397 F. Supp. 3d 847, 873 (N.D. Tex. 2019) (collecting cases).

"As a remedy based on quasi-contract principles, unjust enrichment is unavailable when a valid, express contract governing the subject matter of the dispute exists."  *Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 112 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (citing *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683–84 (Tex. 2000)).  Well Cell entered into license agreements with Insulinic of Hialeah and Insulinic of Lafayette.  Each of these written agreements covers Well Cell's "patented technology . . . and proprietary and confidential trade secrets." (Docket Entry No. 43 ¶ 30).  Well Cell entered into nondisclosure agreements, also covering Well Cell's intellectual property, with Calvit and Dr. Patrick LeLeaux.  (*Id.* ¶ 95).  Because contracts govern Well Cell's dispute with these defendants, the unjust enrichment claims against them must be dismissed.

### 6.    The Breach of Contract Claims against Insulinic of Lafayette, Insulinic of Hialeah, and Shawn Calvit

The defendants argue that Well Cell's claims for breach of the license agreements must be dismissed because Well Cell has not shown a condition precedent to filing suit under those agreements.  The defendants rely on the following provision in both agreements:

> The Parties to this Agreement and their officers, directors, employees, and affiliates consent to the exclusive personal jurisdiction of the appropriate court in Harris County, Texas, if there is any dispute related to this Agreement or any conflict among or between them.  In the event of any dispute or conflict, the Parties agree to participate in at least FOUR (4) hours of mediation in accordance with standard mediation procedures. . . . In the event the dispute or conflict is not resolved in mediation, the Parties agree that the dispute or conflict will be determined by binding arbitration before a former or retired Texas Judge or Justice to be selected

by the Administrative Judge of the Harris County District Courts.   Failure to
mediate does not warrant arbitration.   Further, the arbitrator shall order mediation
if it has not already occurred.

(Docket Entry Nos. 78-3 at 5 § 10, 78-4 at 6–7 § 10).   Well Cell responds that this language does

not establish a condition precedent to suit under Texas law.   (Docket Entry No. 87 ¶ 25).

"A condition precedent is an event that must happen or be performed before a right can

accrue to enforce an obligation.   A covenant, as distinguished from a condition precedent, is an

agreement to act or refrain from acting in a certain way.   *Solar Applications Eng'g, Inc. v. T.A.

Operating Corp*., 327 S.W.3d 104, 108 (Tex. 2010) (internal quotation marks and citations

omitted).   "In order to make performance specifically conditional, a term such as 'if,' 'provided

that,' 'on condition that,' or some similar phrase of conditional language must normally be

included." *Id.* at 109.

The court agrees with Well Cell.   The language in the license agreements does not use

conditional language or otherwise make mediation a condition precedent to filing suit.

### 7.     The Trademark Infringement Claims

Well Cell alleges trademark infringement and dilution of its marks "Diabetes Relief,"

"DR$_x$," and "Physiologic Insulin Resensitization," under the Lanham Act and Texas law.   Well

Cell's claim is brought under section 43(a) of the Lanham Act, (Docket Entry No. 87 ¶ 17), which

covers unregistered marks.   *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.8

(5th Cir. 2010); *see also* 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 27:12 (5th

ed.).

The defendants argue that Well Cell's trademark-infringement claims must be dismissed

because Well Cell has not established that it owns the trademarks in question.   (Docket Entry No.

78 at 4).   To prevail on a claim for trademark infringement under section 43(a) of the Lanham Act,

a plaintiff must show that it possesses a valid mark, and that the defendant's use of the mark creates

a likelihood of confusion as to source, affiliation, or sponsorship. *Jim S. Adler, P.C. v. McNeil Consultants, LLC*, 10 F.4th 422, 426 (5th Cir. 2021). "The elements of common law trademark infringement under Texas law are the same as those under the Lanham Act." *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017) (citing *Hot-Hed, Inc. v. Safehouse Habitats (Scotland), Ltd*., 333 S.W.3d 719, 730 (Tex. App.—Houston [1st Dist.] 2010, pet. denied)).

Well Cell's supplemental brief in opposition to the defendants' motion to dismiss makes clear that its ability to assert its trademark-infringement claims is based on the purchase of nonparty Diabetes Relief's intellectual property under an asset purchase agreement. (Docket Entry No. 87 ¶ 11, 12 & n.1). The relevant portion of the asset purchase agreement provides:

> At Closing and upon the Purchaser paying the Purchase Price in full to the Seller, the Seller will provide the Purchaser with duly executed forms and documents evidencing transfer of the Assets, where required including, but not limited to, bills of sale, assignments, assurances and consents. The Seller will also cooperate with the Purchaser as needed in order to effect the required registration, recording and filing with public authorities of the transfer of ownership of the Assets to the Purchaser.

(Docket Entry No. 41-1 § 7). The court has previously analyzed this language and concluded that payment of the full purchase price appears to be a condition precedent to the delivery of Diabetes Relief's assets, including its intellectual property, to Well Cell. (*See* Docket Entry No. 76 at 9–10). Well Cell is the equitable, but not the legal, owner of the trademarks in question.

Fifth Circuit law is clear that one must "possess[]" a trademark in order to sue for infringement. *McNeil Consultants*, 10 F.4th at 426. "Possession" is not defined. Well Cell alleges that it has used the marks since February 2016. (Docket Entry No. 43 ¶ 156). There does not appear to be Supreme Court or Fifth Circuit authority addressing whether a beneficial owner may sue under section 43(a). Section 43(a) does not on its face limit standing to owners; rather, it states that an infringer "shall be liable in a civil action *by any person who believes that he or she is or is*

*likely to be damaged* by such act." 15 U.S.C. § 1125(a) (emphasis added).  At least one district court has concluded that a beneficial owner of a trademark may sue for infringement.  *See Lunkenheimer Co. v. Pentair Flow Control Pac. PTY Ltd.*, No. 1:11-cv-824, 2014 WL 4450034, at *11 (S.D. Ohio Sept. 10, 2014).  Given the ambiguity of the word "possession" in this context, the language of the statute, and the limited authority from other courts, the court will allow Well Cell to proceed with its trademark-infringement claims.

Well Cell also brings a dilution claim under section 43(c) of the Lanham Act.  Dilution claims under section 43(c) of the Act may be brought only by "the owner of a famous mark."  *Id.* § 1125(c)(1).  "Under . . . 43(c), a claimant must own the mark outright to have statutory standing." *Neutron Depot, LLC v. Bankrate, Inc.*, 798 F. App'x 803, 806 (5th Cir. 2020) (per curiam).  The same restrictions apply with respect to the Texas anti-dilution state.  TEX. BUS. & COM. CODE § 16.103(a) (claims may be brought by "the owner of a mark that is famous and distinctive").  Well Cell does not point to authority supporting its argument that "ownership," as used in section 45(c), means anything other than legal ownership.

The dilution claims are dismissed.

### III.    Analysis of the Motion to Stay Pending Appeal

After examining the relevant four factors, the court finds no reason to stay its order of preliminary injunction.

#### A.    Success on the Merits

The defendants argue that the court's order of preliminary injunction "expanded the scope of the temporary restraining order" previously entered.  (Docket Entry No. 80 at 1).  The defendants argue that the court's preliminary injunction order "shuts down medical facilities; it will cause the loss of jobs; it will prevent diabetic patients from receiving their treatment; and it

will prevent [medical practitioners] . . . from using common medical devices to treat diabetic patients." (*Id.*)

The defendants contend that they are likely to succeed on their appeal of the preliminary injunction with respect to Desgraves and Elliot because the court does not have personal jurisdiction over those defendants. (*Id.* at 3–4). As explained above, the court dismisses the claims against Desgraves and Elliot.

The defendants argue that they are likely to succeed on their appeal of the preliminary injunction with respect to the patent-infringement claims because the patents are invalid, and the plaintiffs cannot meet their burden to show that the defendants are infringing the patents. (*Id.* at 4–14). Well Cell did not identify with particularity what products used by the defendants are infringing on the asserted patents. (*Id.* at 7). Nor did the court, according to the defendants, identify which claims of Well Cell's patents are being infringed. (*Id.* at 7). The defendants argue that the court impermissibly shifted the burden to the defendants, making them prove noninfringement rather than requiring Well Cell to prove infringement. (*Id.* at 8). The defendants argue that Well Cell's claims of trade-secret misappropriation will also fail, because: (1) Well Cell did not show that any information used by the defendants "has value because it is a secret"; and (2) did not show that the defendants were using any of its purported trade secrets. (*Id.* at 15).

Finally, the defendants argue that the court's preliminary injunction is overly broad and insufficiently tailored to the defendants' conduct. (*Id.* at 17–19). The defendants argue that the court's injunction should have been limited to prohibiting any infringement of the '990 Patent and misappropriating Well Cell's trade secrets. (*Id.* at 18). There was "no need to prohibit any form of intravenous treatment to protect Well Cell's proprietary rights." (*Id.*).

The court's resolution of the patent-infringement claims applied the correct legal standard. In its memorandum, the court observed that "the *patentee* [Well Cell] must show that it will likely prove infringement."  (Docket Entry No. 76 at 13) (emphasis added) (quoting *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009)).  There is no dispute that the patents are presumptively valid.  35 U.S.C. § 282(a).  In response to a direct question from the court, the defendants represented at the hearing that they were not challenging the validity of the patents on Well Cell's motion for preliminary injunction:

> THE COURT: So is your challenge today that—not that the patents are invalid but that they were not infringed upon?
>
> [Defendants' Counsel]: Correct, Your Honor.

(Docket Entry No. 70 (Oct. 31, 2022 Tr.) at 13:18–21).  The defendants point out that counsel directed the court to their brief, (Docket Entry No. 47), filed only a few days before the hearing. The brief contains about a page of argument that Well Cell's patents are invalid.  (*Id.* at 19–20). In that page, the defendants provide a sentence-long description of each patent, and then assert that "there is nothing 'inventive' about using a patient's medical record, generic tables for treatment, and medical equipment—as a process . . . or a kit . . .—to individualize, even automatically, treatment provided through intravenous transfer."  (*Id.*).

Invalidity must be shown by "clear and convincing" evidence.  *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 95 (2011).  A preliminary injunction should not issue if the party opposing the injunction raises "a substantial question concerning infringement or validity."  *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1340 (Fed. Cir. 2003) (quoting reference omitted).  Even if the court misinterpreted counsel's statement at the hearing, the argument in the defendants' brief— which provides no detail regarding either patents' specification or claims—did not raise a "substantial question" of invalidity.  The motion to stay provides additional arguments supporting

21

the invalidity defense.  (Docket Entry No. 10–14).  A motion to stay is not an opportunity for Well Cell to raise arguments that could and should have been made at the preliminary injunction hearing and in the briefs filed for that hearing.

At the hearing, the defendants' counsel extensively questioned Well Cell's representative, Scott Hepford, about the '990 Patent.  With respect to independent claim 19, Hepford testified that the defendants must be practicing the patent to perform the services they advertise.  (Docket Entry No. 71 (Nov. 1, 2022 Tr.) at 195:15–196:12).  Although Hepford admitted that the defendants' marketing might include other, less effective treatment modalities, the defendants presented no witnesses at the hearing to rebut his testimony.  The court did not find credible the deposition testimony of Shawn Calvit, who, despite lacking any medical background, attempted to distinguish the defendants' current practices from Well Cell's patented modality.  (*See* Docket Entry No. 76 at 16).

Neither party presented expert testimony or testimony from practitioners that would provide greater clarity.  Neither party requested a *Markman* hearing or for claim construction in connection with the motion for preliminary injunction.  On the record before it, the court found Hepford's testimony regarding the '990 Patent persuasive.

Hepford testified that Well Cell's trade secrets, in concert with its patents, are crucial parts of Well Cell's method.  (*See, e.g.*, Oct. 31 Tr. at 58:15–22; Nov. 1 Tr. at 28:1–4).  These trade secrets included precise dosing protocols.  (Nov. 1 Tr. at 129:12–20).  The trade secrets also included other matters related to treatment with Well Cell's proprietary method, such as what to do if a patient does not appear to be responding to treatment.  (*Id.* at 138:9–10).  This information is not disclosed in Well Cell's patents.  Well Cell shared those secrets with the defendants, (Oct. 31 Tr.. at 76:9–24), and attempted to keep them confidential through nondisclosure agreements.

Calvit did not effectively identify the difference between Well Cell's method and Insulinic's method. The record shows that Well Cell demonstrated likely success on the merits of its trade-secrets claims.

### B. Irreparable Harm

The defendants contend that the "preliminary injunction may well destroy the Defendants' business." (Docket Entry No. 80 at 19). This assertion is incompatible with Calvit's testimony that Insulinic provides "primary care" to its clinic patients, including "wellness visits, weight loss, diabetes education, nutrition therapy, obesity counseling," and "many different types" of infusions, for "weight loss, for energy, micronutrients, *insulin infusion*." (Docket Entry No. 48-4 ("Calvit Tr.") at 53:18–54:10 (emphasis added); *see also id.* at 127:22–128:4 (stating that Insulinic Hawaii planned to offer the same range of treatments)). The court's order of preliminary injunction does not prohibit the defendants from offering primary-care services, counseling, and many other types of care. Calvit testified that Insulinic's business would suffer substantial financial harm if it could not treat "diabetes patients." (*Id.* at 383: 3–23). But there is no dispute that there are means and methods to treat diabetes other than those Well Cell claims it has patented. Additionally, the defendants do not provide, and have not provided, information regarding the relative amounts of revenue they derive from the different services and products they offer. The defendants submitted an additional "Unsworn Declaration of Shawn Paul Calvit" in support of their motion to stay. In his declaration, Calvit states that the preliminary injunction will cause a loss in revenue without any diminishment of the defendants' expenses. (Docket Entry No. 80-1 ¶ 6). Revenue loss is the foreseeable consequence of many forms of injunctive relief in the commercial context and does not itself indicate irreparable harm.

C.      **The Stay's Potential Injury to Other Parties**

The court previously concluded that Well Cell would likely suffer irreparable harm to its reputation and business goodwill absent an injunction.  (Docket Entry No. 76 at 19–20).  The defendants' motion to stay makes no new arguments about the potential harm to Well Cell and presents no basis for changing the court's previous conclusion.

D.      **The Public Interest**

Calvit states that, if treatment is interrupted, "patients could develop neuropathy or even kidney failure, and, at a minimum, will be required to restart their treatment schedule all over again." (*Id.* ¶ 7).  The record indicates that exogenous intravenous insulin therapies such as Well Cell's are not the only treatments available to patients suffering from diabetes or other metabolic disorders. (*See, e.g.*, Oct. 31 Tr. at 59:18–60:8).  Indeed, the treatment that the defendants want to continue offering diabetes patients—who are already at an elevated risk of related medical problems—has little mainstream acceptance.  (*Id.* at 60:20–25).  In light of the record, the declaration from Calvit, a businessman with no training or experience in medicine, does not persuade the court that Insulinic patients will suffer harm outweighing the risks of harm to the public if the court leaves the preliminary injunction in place.

IV.     **Conclusion**

The motion to dismiss, (Docket Entry No. 35), is granted in part.  The following claims are dismissed:

- the claims against Desgraves and Elliot;

- the copyright claims (Counts A & B);

- the DTPA claims (Count F);

- the unjust enrichment claims against Calvit, LeLeaux, Insulinic of Hialeah, and Insulinic of Lafayette (Count I); and

- the trademark dilution claims (Counts M & N).

The motion to dismiss is otherwise denied.

The motion to stay, (Docket Entry No. 80), is denied.

SIGNED on January 12, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge