Case 4:22-cv-03062   Document 173   Filed on 02/21/24 in TXSD   Page 1 of 15

United States District Court
Southern District of Texas
**ENTERED**
February 21, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| WELL CELL GLOBAL LLC *and* WELL CELL SUPPORT LLC, § § § § | |
| Plaintiffs, § | CIVIL ACTION NO. H-22-3062 |
| v. § § | |
| SHAWN PAUL CALVIT, MARC PIERRE DESGRAVES IV, CHARLES ALEXANDER ELLIOTT, PATRICK DALE LELEUX, M.D., INSULINIC OF LAFAYETTE LLC, INSULINIC OF HIALEAH LLC, INSULINIC OF HAWAII, LLC, INSULINIC OF GRETNA, LLC, *and* INSULINIC OF HAMMOND, LLC, § § § § § § § § § § § | |
| Defendants. § | |

**MEMORANDUM AND OPINION**

This case involves medical capitalism, with an emphasis on capitalism. Well Cell markets "physiologic insulin resensitization" treatments for metabolic disorders, primarily diabetes. At the preliminary injunction hearing, Well Cell called a single witness who did not have formal medical training to present evidence about its treatment. Well Cell licenses its treatments to physicians and other institutions. Well Cell Global LLC and Well Cell Support LLC (together, "Well Cell") sued Insulinic clinics in multiple states, as well as the officers of Insulinic, alleging unlawful use of Well Cell's intellectual property. (Docket Entry No. 1).

Well Cell claims that its treatment modality differs from conventional insulin treatments for metabolic disorders. The issue before this court is not whether the medications are safe or effective; Well Cell uses an FDA approved pump and FDA approved insulin, but physiologic

insulin resensitization as a treatment modality is not FDA approved.[1] Well Cell licenses this modality to health care facilities, including clinics. The licensees included the defendant clinics until July 2022. Well Cell alleges that, after it terminated the license agreements, defendants continued to unlawfully use the licensed materials. Well Cell moved for a preliminary injunction. (Docket Entry No. 4). After reviewing briefing and holding a hearing, the court granted the motion and entered a preliminary injunction. (Docket Entry No. 76). The court assumes familiarity with the facts laid out in that opinion. (*Id.*).  The defendants appealed.

While the appeal was pending, the court ruled on the defendants' motion to dismiss, granting it in part on the basis that Well Cell lacked standing to assert copyright infringement and trademark dilution claims. (Docket Entry No. 92). Well Cell filed a Second Amended Complaint, adding Diabetes Relief, the original copyright and trademark holder, as a plaintiff. (Docket Entry No. 161). Well Cell also filed for default against one of the defendants, Dr. Patrick LeLeux, and the court entered default. (Docket Entry No. 141).  No other activity occurred in the case, pending the appeal.

On September 21, 2023, the Federal Circuit reversed this court's grant of a preliminary injunction on the basis that the plaintiff had not shown proof of irreparable harm and likelihood of success on the merits. *Well Cell Glob. LLC v. Calvit*, No. 2023-1229, 2023 WL 6156082 (Fed. Cir. Sept. 21, 2023).  Defendants then moved to dismiss the Second Amended Complaint, and Dr. LeLeux moved to set aside the entry of default against him.

---

[1] An article in a medical news journal compared Well Cell to Trina, a diabetes infusion clinic that went out of business after its treatment was labelled a "scam." The article contained statements from multiple doctors and "endocrinology experts [who] raised . . . alarms that PIR . . . has no evidence behind it and may not be helping patients at all." Cheryl Clark, *Insulin Infusion Clinics Claim to Treat Just About Anything*, MEDPAGE TODAY (July 21, 2023) https://www.medpagetoday.com/special-reports/exclusives/105583.

2

The court has reviewed the Federal Circuit's ruling, the briefing, the record, and the law. The court grants Dr. LeLeux's motion to set aside the entry of default, and grants in part the defendants' motion to dismiss as to Dr. LeLeux, the copyright and trademark dilution claims, and the trade secrets claim. The reasons are set out below.

**I.      The Legal Standard for Dismissal**

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief

3

above the speculative level.'" *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (alterations omitted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

## II. Analysis

### A. Default Against Dr. LeLeux

On March 10, 2023, the court entered a stay and entered default against Dr. Patrick LeLeux. (Docket Entry No. 141). In October, Dr. LeLeux moved to set aside the entry of default. (Docket Entry No. 167). Courts routinely set aside entries of default when the delay in answering or filing a responsive pleading is short, there is no prejudice, and there is a meritorious basis to defend. *Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552 (5th Cir. 2003). Here, there was no prejudice from setting aside the default given the delay caused by the stay, and Dr. LeLeux has stated a strong affirmative defense.

Although Well Cell opposes setting aside the entry of default on the basis that it expended effort and money on service and filing for default, this claim of prejudice is not sufficient for the relief sought. *See LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 603 (5th Cir. 1976) ("paying costs or expenses" does not amount to "prejudice in a legal sense."); *Elbaor v. Tripath Imaging, Inc.*, 279

F.3d 314, 317 n.3 (5th Cir. 2002) (costs of preparing for trial, including attorney's fees, do not constitute legal prejudice).

Dr. LeLeux's motion to set aside the entry of default is granted.

### B. Personal Jurisdiction Over Dr. LeLeux

The defendants argue that the court lacks personal jurisdiction over Dr. LeLeux, who is not a Texas resident or citizen. (Docket Entry No. 166 at 18–19). Well Cell does not dispute Dr. LeLeux's citizenship but argues that the court may exercise specific personal jurisdiction over him because he signed an NDA that included a clause stating that the parties would construe the agreement "in accordance with the laws of the State of Texas, County of Harris." (Docket Entry No. 169 at 25).

Well Cell must make a prima facie showing of personal jurisdiction over these defendants. *Pervasive Software, Inc. v. Lexware GmbH & Co.*, 688 F.3d 214, 219 (5th Cir. 2012). Due process permits the exercise of personal jurisdiction over a nonresident defendant when that defendant has "purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts'" with the forum state and the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)). "The non-resident's purposeful availment must be such that the defendant should reasonably anticipate being haled into court in the forum state." *Ruston Gas Turbines, Inc. v. Donaldson Co., In*c., 9 F.3d 415, 419 (5th Cir. 1993) (internal quotations omitted).

With respect to specific personal jurisdiction, the inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (internal quotations omitted); *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921

F.3d 522, 539 (5th Cir. 2019) ("Specific jurisdiction applies when a non-resident defendant 'has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001))).

Under the "effects test," in certain circumstances, "an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 628 (5th Cir. 1999) (citing *Calder v. Jones*, 465 U.S. 783, 789–90 (1984)).  The Fifth Circuit has clarified that the effects test "is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state." *Allred v. Moore & Peterson*, 117 F.3d 278, 286 (5th Cir. 1997).  Additionally, "[f]oreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999) (citations omitted).

Well Cell alleges personal jurisdiction over Dr. LeLeux "because he has committed acts directed at Texas that have caused tortious injury to [Well Cell] in Texas, specifically, misappropriation of [Well Cell]'s intellectual property, with knowledge that [Well Cell] would thereby be harmed." (Docket Entry No. 169 at 26).  Well Cell also alleges that Dr. LeLeux's "tortious acts giving rise to this lawsuit have been directed at Texas and the harm to [Well Cell] has occurred, and will continue to occur, within Texas." (*Id.*).

Well Cell argues that its NDA with Dr. LeLeux confers personal jurisdiction over him, citing to cases involving NDA forum selection clauses. *Sailtime Licensing Grp., LLC v. Treibick*, No. 05-CA-319-SS, 2005 WL 8155167, *6 (W.D. Tex. Sept. 27, 2005) (A court may "assert

personal jurisdiction over [a defendant] for [their] alleged consent to the NDA which contained a forum selection clause that required all suits to be filed in . . . Texas."). But the NDA Dr. LeLeux signed contains a choice of law clause, not a forum selection clause. (Docket Entry No. 169-1). The NDA itself does not confer personal jurisdiction. In addition, Well Cell fails to allege that the misappropriation it claims arises from Dr. LeLeux's Texas contacts. Instead, Well Cell alleges that it communicated with Dr. LeLeux from its Texas offices, which is not the direction of activities towards Texas by Dr. LeLeux. *Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("The plaintiff cannot be the only link between the defendant and the forum."); *cf. Wein Air*, 195 F.3d at 212 (finding specific personal jurisdiction over defendants with respect to fraud claim when the *defendants* directed letters, phone calls, and faxes to Texas containing fraudulent misrepresentations).

The present record is insufficient to support personal jurisdiction over Dr. LeLeux, and the claims against him are dismissed.

### C. Copyright and Trademark Dilution Claims

Only the "legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right." 17 U.S.C. § 501(b). This court previously found that, "under the terms of the asset purchase agreement [between Well Cell and Diabetes Relief], Well Cell is not the legal owner of the copyrights in question." (Docket Entry No. 76 at 10). The court then determined that Well Cell lacked standing to assert its copyright and trademark dilution claims because the copyrights and trademarks at were issued to Diabetes Relief, which was not a party to this case. (Docket Entry No. 76 at 10; 93 at 17–19). After this ruling, Well Cell filed a Second Amended Complaint adding Diabetes Relief as a plaintiff and re-asserting the copyright and trademark dilution claims solely for Diabetes Relief. The defendants challenge

the amended copyright and trademark dilution claims for lack of Well Cell's standing to assert them. (Docket Entry No. 166 at 18–20).

"[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek[.]" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Standing on one claim, therefore, cannot confer standing on another separate claim. At the time of filing, Well Cell did not have standing to assert the copyright infringement and trademark dilution claim, and so the court did not have jurisdiction over those claims. Well Cell seeks to amend its complaint and add Diabetes Relief as the sole plaintiff for claims Well Cell could not itself assert when the case was filed.

"Rule 15 does not permit a plaintiff from amending its complaint to substitute a new plaintiff in order to cure the lack of subject matter jurisdiction." *Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447, 453 (5th Cir. 1995). The fact that, as Well Cell argues, it had standing to assert *other* claims against defendants does not alter the fact that this court lacks subject matter jurisdiction over Well Cell's copyright infringement and trademark dilution claims. "[W]here a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs, a new class, and a new cause of action." *Summit Off. Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278, 1282 (5th Cir. 1981).

The copyright infringement and trade dilution claims cannot be brought into this case, as the original plaintiffs lack standing to assert the claims. This ruling does not preclude Diabetes Relief from asserting these claims in a separate action.

8

### D. Trademark Infringement Claims

Although the defendants refer generally to "trademark claims" in their motion to dismiss, (Docket Entry No. 166 at 20), the claims for trademark dilution and trademark infringement are separate. This court previously denied the motion to dismiss as to the trademark infringement claim, explaining:

> Fifth Circuit law is clear that one must "possess[]" a trademark in order to sue for infringement. *McNeil Consultants*, 10 F.4th at 426. "Possession" is not defined. Well Cell alleges that it has used the marks since February 2016. (Docket Entry No. 43 ¶ 156). There does not appear to be Supreme Court or Fifth Circuit authority addressing whether a beneficial owner may sue under section 43(a). Section 43(a) does not on its face limit standing to owners; rather, it states that an infringer "shall be liable in a civil action *by any person who believes that he or she is or is likely to be damaged* by such act." 15 U.S.C. § 1125(a) (emphasis added). At least one district court has concluded that a beneficial owner of a trademark may sue for infringement. *See Lunkenheimer Co. v. Pentair Flow Control Pac. PTY Ltd.*, No. 1:11-cv-824, 2014 WL 4450034, at *11 (S.D. Ohio Sept. 10, 2014). Given the ambiguity of the word "possession" in this context, the language of the statute, and the limited authority from other courts, the court will allow Well Cell to proceed with its trademark-infringement claims.

(Docket Entry No. 92 at 18–19). This issue was not addressed by the Federal Circuit and the defendants do not appear to challenge this analysis. The motion to dismiss the trademark infringement claim is denied.

### E. Trade Secret Claims

To show a violation of either the Defend Trade Secrets Act or Texas Uniform Trade Secrets Act, a party must show that "(1) the trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means, and (3) the defendant *used* the trade secret without authorization from the plaintiff." *CAE Integrated, LLC v. Moov Techs., Inc.*, 44 F.4th 257, 262 (5th Cir. 2022). The Defend Trade Secrets Act requires a showing that the product was used in interstate commerce. 18 U.S.C. § 1836. Both statutes define trade secrets and misappropriation similarly. *See* 18 U.S.C. § 1839; Tex. Civ. Prac. & Rem. Code §

9

134A.002. At common law, "[m]isappropriation of trade secrets is shown by proof (1) that a trade secret existed; (2) that the trade secret was acquired through a confidential relationship; (3) that the defendant used the trade secret without authorization from the plaintiff; and (4) that the owner sustained damages." *SPS Austin, Inc. v. Wilbourn*, No. 03-20-00054-CV, 2021 WL 5456659, at *9 (Tex. App.—Austin Nov. 19, 2021, no pet.) (citing *Cuidado Casero Home Health of El Paso, Inc. v. Ayuda Home Health Care Servs., LLC*, 404 S.W.3d 737, 744 (Tex. App.—El Paso 2013, no pet.).

The Federal Circuit reversed this court's previous finding that Well Cell had sufficiently identified its trade secrets. *Well Cell Glob. LLC v. Calvit*, No. 2023-1229, 2023 WL 6156082, at *5 (Fed. Cir. Sept. 21, 2023) ("As Well Cell cannot describe its alleged trade secrets, it cannot show a likelihood of success on its misappropriation claim."). Well Cell alleges that its trade secrets include "business contacts, clients, physicians, vendors, investors, borrowers, lenders, agents, brokers, banks, lending corporations, buyers, and seller." (Docket Entry No. 169 at 29). It is true that lists of business contacts may be trade secrets. *See, e.g.*, *Guy Carpenter & Co., Inc. v. Provenzale*, 334 F.3d 459, 467 (5th Cir. 2003). But it is not true that *any* list of business contacts constitutes a trade secret, and Well Cell provides no specific information as to why its contacts are protectable trade secrets.

Well Cell claims it "provided more specific information regarding their trade secrets at the preliminary injunction hearing." (Docket Entry No. 169 at 29). But the Federal Circuit considered the evidence provided at the injunction hearing and held that it "[could not] constitute a trade secret." *Well Cell Glob. LLC*, 2023 WL 6156082, at *5. The Federal Circuit also gave Well Cell the opportunity to explain its trade secrets at appellate oral argument, and "Well Cell could not explain[.]" *Id.* Well Cell claims that "Defendants' argument regarding the findings of the Federal

10

Circuit are nothing more than an attempt at an improper post-hoc 'gotcha[.]'" (Docket Entry No. 169 at 30). Well Cell acknowledges "that the Federal Circuit made such findings," but argues that "those findings occurred months after Plaintiffs filed their SAC." (*Id.*).

Given the Federal Circuit's ruling that Well Cell has not identified any trade secret that was misappropriated, Well Cell's failure to identify a more specific trade secret is fatal to its claim. The court need not complete the remaining misappropriation analysis because Well Cell has not shown that a trade secret exists. *See CAE Integrated, LLC*, 44 F.4th at 262. Well Cell argues it should now be permitted to amend its complaint to address the issues raised by the Federal Circuit. But Well Cell has already amended its complaint twice and does not identify how leave to amend would allow it to plausibly plead protectable trade secrets when prior attempts have failed. Further amendment on this claim is denied as futile.

The trade secrets claims are dismissed.

**F. Unjust Enrichment Claims**

"A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Elias v. Pilo*, 781 F. App'x 336, 338 (5th Cir. 2019) (per curiam) (quoting *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)). "As a remedy based on quasi-contract principles, unjust enrichment is unavailable when a valid, express contract governing the subject matter of the dispute exists." *Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 112 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (citing *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683–84 (Tex. 2000)).

This court previously dismissed Well Cell's claim for unjust enrichment, explaining:

> Well Cell's claim for unjust enrichment is based on the defendants' infringement and misappropriation of Well Cell's intellectual property. The Fifth Circuit has permitted

11

> unjust enrichment claims to proceed even when the plaintiffs had other theories of recovery available. *See Firebirds Int'l, LLC v. Firebird Rest. Group, LLC*, 397 F. Supp. 3d 847, 873 (N.D. Tex. 2019) (collecting cases). . . . Well Cell entered into license agreements with Insulinic of Hialeah and Insulinic of Lafayette. Each of these written agreements covers Well Cell's "patented technology . . . and proprietary and confidential trade secrets." (Docket Entry No. 43 ¶ 30). Well Cell entered into nondisclosure agreements, also covering Well Cell's intellectual property, with Calvit and Dr. Patrick LeLeaux. (*Id.* ¶ 95). Because contracts govern Well Cell's dispute with these defendants, the unjust enrichment claims against them must be dismissed.

(Docket Entry No. 92 at 16). The addition of Diabetes Relief as a plaintiff does not change the fact that the claims are still governed by valid contracts. Diabetes Relief is related to this litigation because it entered into a contract with Well Cell, (Docket Entry No. 161 at ¶ 3), and Well Cell then entered into contracts with Insulinic of Hialeah, Insulinic of Lafayette, Calvit, and Dr. LeLeux. Well Cell argues in response that they "have made sufficient allegations on each of their causes of action[.]" (Docket Entry No. 169 at 27). But the plaintiffs do not address the existence of the valid contracts or provide an explanation for why the unjust enrichment claim should proceed in the face of contracts governing the dispute.

The unjust enrichment claim is dismissed.

### G. Unfair Competition Claims

"Unfair competition under Texas law is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters." *Taylor Pub. Co. v. Jostens, Inc*., 216 F.3d 465, 486 (5th Cir. 2000) (internal quotations omitted). "Unfair competition requires that 'the plaintiff show an illegal act by the defendant which interfered with the plaintiff's ability to conduct business.' 'Although the illegal act need not necessarily violate criminal law, it must be an independent tort.'" *Boltex Mfg. Co., L.P. v. Galperti, Inc*., 827 F. App'x 401, 410 (5th Cir. 2020) (per curiam) (quoting *Taylor Pub*., 216 F.3d at 486).

12

This court previously denied the defendants' motion to dismiss the unfair competition claim on the basis that the claim was "sufficiently based on the[] independent substantive law violations" of "misappropriation of trade secrets and patent infringement." (Docket Entry No. 92 at 15). The defendants now argue that, although they "do not attack the adequacy of Plaintiffs' patent infringement causes of action[,]" the unfair competition claim is preempted by federal patent law. (Docket Entry No. 166 at 25). The Fifth Circuit has previously held that "[p]atent laws preempted [a Texas state] unfair-competition-by-misappropriation claim." *Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 772–73, 777 (5th Cir. 2017). In response, Well Cell argues that "the entirety of Defendants' preemption argument is simply citing case law and concluding the patent claims preempt the unfair competition claims." (Docket Entry No. 169 at 30). But Well Cell does not point to contravening case law, which holds that an unfair competition claim based on patent infringement alone is preempted by federal law.

Because the court has dismissed the claims for misappropriation of trade secrets, the unfair competition claim must also be dismissed.

**H.  Leave to Amend**

Well Cell argues that if the court grants the motion to dismiss on any counts, the dismissal should be without prejudice and the plaintiffs should be given leave to amend.  It states, with emphasis, that "*[p]laintiffs are not legal clairvoyants*" and argues that because the Federal Circuit's opinion issued six months after the Second Amended Complaint, leave to amend is appropriate.  (Docket Entry No. 169 at 31).

The Federal Circuit's opinion did not change the law or create new law that would have required Well Cell to exercise "legal clairvoyance" to anticipate the appellate court's conclusions. Nevertheless, "unless there is a substantial reason to deny leave to amend, the discretion of the

13

district court is not broad enough to permit denial." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). Substantial reasons include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 566 (5th Cir. 2002) (internal quotations omitted).

The dismissal of the copyright infringement and trademark dilution claims are with prejudice, because amending claims for which standing does not exist would be futile. Well Cell has previously failed to cure deficiencies related to its personal jurisdiction and the unjust enrichment claims, and the dismissal of those claims are also with prejudice. The dismissal of the remaining claims is without prejudice and with leave to amend solely as to those claims.

### III.  Conclusion

Dr. LeLeux's motion to set aside entry of default, (Docket Entry No. 167), is granted. The motion to dismiss, (Docket Entry No. 166), is granted. The following claims are dismissed with prejudice:

- the claims against Dr. LeLeux;
- the copyright claims (Counts A & B);
- the unjust enrichment claims against Calvit, LeLeux, Insulinic of Hialeah, and Insulinic of Lafayette (Count H); and
- the trademark dilution claims (Counts L & M).

The following claims are dismissed without prejudice:

- the misappropriation of trade secret claims (Counts D & E); and
- the unfair competition claims (Counts F & G).

In the interest of clarity, the court notes that the claims for trademark infringement, patent infringement, and breach of contract still remain.

Well Cell's motion for leave to amend is granted as to the misappropriation of trade secrets and unfair competition claims. Well Cell must file an amended complaint no later than March 1, 2024.

SIGNED on February 21, 2024, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge