**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **WELL CELL GLOBAL LLC AND, WELL** | § | |
| **CELL SUPPORT LLC, AND DIABETES** | § | |
| **RELIEF LLC,** | § | |
|      *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **CIVIL CASE NO.** |
| | § | **4:22-cv-03062-LHR** |
| **SHAWN PAUL CALVIT, MARC PIERRE** | § | **JURY DEMANDED** |
| **DESGRAVES IV, CHARLES ALEXANDER** | § | |
| **ELLIOTT, PATRICK DALE LELEUX, M.D.,** | § | |
| **INSULINIC LLC, INSULINIC OF** | § | |
| **LAFAYETTE LLC, INSULINIC OF** | § | |
| **HIALEAH LLC, INSULINIC OF HAWAII,** | § | |
| **LLC, INSULINIC OF GRETNA, LLC,** | § | |
| **INSULINIC OF HAMMOND, LLC,** | § | |
| **DIABETES MANAGEMENT CLINIC, LLC,** | § | |
| **AND INTEGRAL MEDICINE GROUP, INC.** | § | |
|      *Defendants.* | § | |

---

**PLAINTIFFS' THIRD AMENDED COMPLAINT**
**AND REQUEST FOR INJUNCTIVE RELIEF**

---

**TO THE HONORABLE COURT:**

     COME NOW, PLAINTIFFS WELL CELL GLOBAL LLC, WELL CELL SUPPORT LLC, and DIABETES RELIEF LLC **(collectively, "Plaintiffs"),** in the above-styled matter and file this *Plaintiffs' Third Amended Complaint and Request for Injunctive Relief*, with jury demand, against **Defendants, Shawn Paul Calvit, Marc Pierre Desgraves IV, Insulinic LLC, Insulinic of Lafayette LLC, Insulinic of Hialeah LLC, Insulinic Hawaii, LLC, Insulinic of Gretna, LLC, Insulinic of Hammond, LLC, Diabetes Management Clinic, LLC, and Integral Medicine Group, Inc. (collectively, "Defendants")**. Plaintiffs allege patent infringement, trade secret misappropriation under the Defend Trade Secrets Act, trade secret misappropriation under the Texas Uniform Trade Secrets Act, unfair competition in violation of

1

Texas common law, unfair competition by misappropriation in violation of Texas common law, unjust enrichment in violation of Texas common law, trademark infringement under the Lanham Act, unfair competition and false designation of origin under the Lanham Act, trademark infringement in violation of Texas common law, unjust enrichment against certain of Defendants, and breach of contract against Defendants. In support thereof, Plaintiffs would respectfully show unto the Court as follows:

## I.    SUMMARY OF THE ACTION

1.    Plaintiffs, Well Cell Global LLC (**"Well Cell Global"**), Well Cell Support LLC (**"Well Cell Support"**), (collectively, **"Plaintiffs"** or **"Well Cell"**) and Diabetes Relief LLC (**"Diabetes Relief"**), bring this action to stop Defendants from misusing Diabetes Relief and Well Cell's intellectual property to deceive the public—especially diabetic patients—into believing that Defendants, and their various "Insulinic" clinics, are affiliated with Well Cell, and/or its predecessor, Diabetes Relief LLC (**"Diabetes Relief"**), or their trusted brand.

2.    Well Cell, a leading pioneer in the field of developing cutting-edge technology for the treatment of diabetes, has been operating for numerous years and has established immense goodwill throughout the country, especially among the diabetic population and experts in the field.

3.    Well Cell is proud of its technology and its body of work to help diabetics all over the world, and its professional reputation has been enhanced by eight peer-reviewed articles in respected medical journals to date, with others currently in production.

4.    Well Cell owns a sizeable intellectual property portfolio. Through an asset purchase agreement, Well Cell Global purchased all of the assets consisting of intellectual property, including federal patents, federal trademark registrations, federal copyright registrations, and trade secrets, all of which pertain to its proprietary technology (collectively, the **"Well Cell IP"**), from

Diabetes Relief in 2020. As of the initial filing of this lawsuit, the full purchase price of the asset purchase agreement was not paid in full. However, as of this Third Amended Complaint, Well Cell Global has completed its payment obligations under the asset purchase agreement, and, thus, Well Cell Global is both the legal and equitable owner of the Well Cell IP. At all times prior to final payment, Well Cell Global was the equitable owner of the Well Cell IP, and Diabetes Relief was the legal owner.

5.     Despite Well Cell and Diabetes Relief's incontestable rights, and in a bad-faith attempt to capitalize on their success, Defendants have opened and are continuing to operate "Insulinic" clinics in at least Louisiana, Florida, Hawaii, and Georgia (the **"Infringing Clinics"**) which infringe the Well Cell IP by (a) using Plaintiffs' trademarks throughout the clinics, on their websites, and in marketing materials, (b) using Plaintiffs' patented products and services, especially training services provided by Well Cell, and by (c) using and benefiting from Plaintiffs' proprietary and confidential trade secrets.

6.     Defendants have also registered and are using the domain name <Insulinic.com> (the **"Infringing Website"**) to advertise their Infringing Clinics.

7.     For these reasons, Plaintiffs bring this action for patent infringement under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.*; trade secret misappropriation under the Defend Trade Secrets Act of 2016, 18 U.S.C. §§ 1836, *et seq.*, and the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code § 134A.001; unfair competition in violation of Texas common law; unfair competition by misappropriation in violation of Texas common law; unjust enrichment in violation of Texas common law; trademark infringement, unfair competition, and false designation of origin under the Lanham Act, 15 U.S.C. § 1125, *et seq.*; trademark infringement in violation of Texas

common law, unjust enrichment against certain of Defendants; and breach of contract against Defendants.

8.      Among other relief, Plaintiffs respectfully ask the Court to: (a) award statutory damages for each incident of patent infringement on the Well Cell IP; (b) order Defendants to disgorge all of their profits from their operation of the Infringing Clinics, trebled; (c) award a reasonable royalty of 10% of all revenues earned by Defendants in connection with the Infringing Clinics, and to treble that award; (d) award punitive damages, attorneys' fees, and costs; and (e) permanently enjoin Defendants and everyone working in concert with them from using the Well Cell IP in any way, or any derivative work, without Well Cell and Diabetes Relief's prior, written consent.

## II.    PARTIES

9.      Well Cell Global LLC (**"Well Cell Global"**) is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business at 11511 Katy Freeway, Suite 102, Houston, Texas 77079, and licensed physicians are among its owners.

10.     Well Cell Support LLC (**"Well Cell Support"**) is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business at 11511 Katy Freeway, Suite 102, Houston, Texas 77079.

11.     Diabetes Relief LLC (**"Diabetes Relief"**) is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business at 11511 Katy Freeway, Suite 100, Houston, Texas 77079, and a licensed physician is among its owners.

12.     Shawn Paul Calvit (**"Defendant Calvit"**) is an individual and, on information and belief, resides at 100 Meadow Lane, Lafayette, Louisiana 70506. Defendant Calvit is the principal behind each of the Infringing Clinics.

13.    Marc Pierre Desgraves IV (**"Defendant Desgraves"**) is an individual and, on information and belief, resides at 9541 Pagosa Street, Commerce City, Colorado 80022. Defendant Desgraves is the Chief Financial Officer and Member of Insulinic Hawaii, LLC.

14.    Insulinic LLC (**"Defendant Insulinic"**) is a limited liability company organized and existing under the laws of the State of Louisiana, with its principal office at 220 Johnston Street Building, Lafayette, Louisiana 70501.

15.    Insulinic of Lafayette LLC (**"Defendant Insulinic LA"**) is a limited liability company organized and existing under the laws of the State of Louisiana, with its principal office at 220 Johnston Street Building, Lafayette, Louisiana 70501.

16.    Insulinic of Hialeah LLC (**"Defendant Insulinic FL"**) is a limited liability company organized and existing under the laws of the State of Florida, with its principal office at 220 Johnston Street Building, Lafayette, Louisiana 70501.

17.    Insulinic Hawaii, LLC (**"Defendant Insulinic HI"**) is a limited liability company organized and existing under the laws of the State of Hawaii, with its principal office at 1360 S. Beretania Street, Suite 500, Honolulu, Hawaii 98614.

18.    Insulinic of Gretna LLC (**"Defendant Insulinic Gretna"**) is a limited liability company organized and existing under the laws of the State of Louisiana, with its principal office at 220 Johnston Street Building, Lafayette, Louisiana 70501.

19.    Insulinic of Hammond LLC (**"Defendant Insulinic Hammond"**) is a limited liability company organized and existing under the laws of the State of Louisiana, with its principal office at 220 Johnston Street Building, Lafayette, Louisiana 70501.

20.     Diabetes Management Clinic, LLC (**"Defendant Diabetes Management"**) is a limited liability company organized and existing under the laws of the State of Georgia, with its principal office at 6 Pine Valley Rd. SW, Rome, Georgia 30165.

21.     Integral Medicine Group, Inc. (**"Defendant Integral"**) is a corporation organized and existing under the laws of the State of Florida; its registered agent is located at 900 W. 49th Street, Suite 448, Hialeah, Florida 33012. Upon information and belief, the clinic also operates out of that address.

## III.   JURISDICTION AND VENUE

22.     This action arises under the under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.*, the Defend Trade Secrets Act of 2016, 18 U.S.C. §§ 1836, *et seq.* (**"DTSA"**), the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code § 134A.001 (**"TUTSA"**), the Texas Business & Commerce Code, the Lanham Act, 15 U.S.C. § 1051, *et seq.*, federal and state common law, and Texas statutory law.

23.     This Court has exclusive subject matter jurisdiction for the patent infringement claims pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has subject matter jurisdiction over this action for the misappropriation of trade secrets under the DTSA pursuant to 28 U.S.C. § 1331. This Court has subject matter jurisdiction for this action for the trademark infringement, unfair competition, and false designation of origin under the Lanham Act pursuant to 15 U.S.C. § 1121.

24.     This Court has supplemental jurisdiction over the Texas statutory and common law claims pursuant to 28 U.S.C. § 1367 because such claims are related to the federal claims for patent infringement and misappropriation of trade secrets in that they form part of the same case or controversy and are derived from a common nucleus of operative facts.

25.    This Court also has subject matter jurisdiction over this dispute under 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship among the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

26.    This Court has personal jurisdiction over Defendants Calvit, Insulinic LA, and Insulinic FL, because they have purposely availed themselves of the privileges and benefits of conducting business in Texas. This Court also has personal jurisdiction over Defendants Calvit, Insulinic LA, and Insulinic FL because each signed a licensing agreement governing the intellectual property at issue in this case, wherein they expressly consented to the personal jurisdiction of this Court for any dispute related to the agreement. Further, Defendants Calvit, Insulinic LA, and Insulinic FL have committed acts directed at Texas that have caused tortious injury to Well Cell in Texas, specifically, misappropriation of Well Cell's intellectual property, with the knowledge that Well Cell would thereby be harmed. Accordingly, Defendants Calvit's, Insulinic LA's, Insulinic FL's tortious acts giving rise to this lawsuit have been directed at Texas and the harm to Plaintiffs has occurred and will continue to occur within Texas.

27.    This Court has personal jurisdiction over Defendants Desgraves, Insulinic, Insulinic HI, Insulinic Gretna, Insulinic Hammond, Diabetes Management, and Integral because they have committed acts directed at Texas that have caused tortious injury to Plaintiffs in Texas, specifically, misappropriation of Plaintiffs' intellectual property, with the knowledge that Plaintiffs would thereby be harmed. Accordingly, Defendants Desgraves, Insulinic, Insulinic HI, Insulinic Gretna, Insulinic Hammond, Diabetes Management, and Integral's tortious acts giving rise to this lawsuit have been directed at Texas and the harm to Plaintiffs have occurred and will continue to occur within Texas.

28.     Additionally, Defendant Desgraves and Patrick Dale LeLeux, M.D. (**"Dr. LeLeux"**) (a known business associate of Defendant Calvit and cited and pictured to this day on Defendant Insulinic's website as a "Team Member") travelled to Texas specifically to attend a multi-day training session on Plaintiffs' patented medical technology and they learned trade secrets from Well Cell during that medical training. Before attending Well Cell's medical training session in Texas and gaining access to Well Cell's trade secrets and patent-protected medical technology, on January 31, 2022, Defendant Desgraves and Dr. LeLeux also signed non-disclosure agreements (**"NDAs"**) with Well Cell and Diabetes Relief in Texas.

29.     Venue is proper, including pursuant to 28 U.S.C. §§ 1332(a)(2) and 1391, as to Defendants Calvit, Insulinic LA, and Insulinic FL because this District is where all or a substantial part of the events or omissions giving rise to the claims occurred. Venue is also proper in this District because Defendants Calvit, Insulinic LA, and Insulinic FL each signed a licensing agreement governing the intellectual property at issue in this case, wherein they expressly consented to venue in this District. In addition, Defendants Calvit, Insulinic LA, and Insulinic FL committed acts of intellectual property infringement in this District and Plaintiffs suffered harm in this District.

30.     Venue is proper, including pursuant to 28 U.S.C. § 1332(a)(2) and 1391, as to Defendants Desgraves, Insulinic, Insulinic HI, Insulinic Gretna, Insulinic Hammond, Diabetes Management, and Integral because, on information and belief, a substantial part of the events giving rise to the intellectual property misappropriation occurred within this District. In addition, Defendants Desgraves, Insulinic, Insulinic HI, Insulinic Gretna, Insulinic Hammond, Diabetes Management, and Integral committed acts of intellectual property infringement in this District and Plaintiffs suffered harm in this District.

## IV.  OPERATIVE FACTUAL BACKGROUND

31.     Well Cell is a leading pioneer in the field of treatment for diabetes and other metabolic disorders and specializes in developing ground-breaking technology for the treatment of diabetes and licensing its proprietary technology to other entities so that they may operate comprehensive diabetes clinics throughout the world. In fact, Well Cell owns a highly valuable and significant intellectual property portfolio—including patents, copyrights, trademarks, and trade secrets—which it carefully and consistently safeguards. Through an asset purchase agreement signed on or about July 24, 2020, Well Cell, who has independently developed and amassed its own intellectual property, purchased its intellectual property from Diabetes Relief. As of the filing of this lawsuit, the full purchase price of the asset purchase agreement has been made, and, thus, Well Cell is both the legal and equitable owner of the Well Cell IP.

32.     As part of Plaintiffs' business, Plaintiffs possess numerous, valuable trade secrets which formed as part of the foundation of an innovative treatment process, including accompanying devices and systems, which assists in the treatment of diabetes and similar conditions, called physiologic insulin resensitization (**"PIR"**), which has been written about in eight peer-reviewed published medical journal articles to date. Plaintiffs have developed this revolutionary process to provide relief to thousands of patients both across the country and around the globe, predominantly through licensed medical practices, clinics, and hospitals, and is currently in the process of conducting clinical trials at universities and other research institutions.

33.     As part of this development process, Plaintiffs expended extensive time, labor, skill, and money, including amassing and synthesizing years of medical and related research, expert professional assistance, procedures, training, and practices and creating specialized processes, and accompanying devices and systems, using, *inter alia*, proprietary, valuable, confidential, and trade

secret technologies and algorithms that provide highly successful specialized, individualized treatments for diabetes and metabolic disorder-related medical conditions, such as neuropathy, nephropathy, poor wound healing, and other disabilities, to a wide range of patients. Plaintiffs have continued to innovate and develop these proprietary technologies and algorithms in a continuing endeavor to adapt and improve these processes, and accompanying devices and systems, based on additional information and studies, including based on the actual practice of Plaintiffs' proprietary processes and use of Plaintiffs' proprietary devices and systems. Including, due to their fine-tuned, detail-oriented, and highly technical nature, these proprietary, valuable, confidential, and trade secret technologies and algorithms that are not easily duplicated or readily ascertainable by the public or competitors, as proper training is required by Well Cell authorized trained personnel.

34.     More specifically, including as a result of this development, Plaintiffs have created, *inter alia*, at least the following trade secret information: technical information related to all aspects of Well Cell's infusion process, including dosing, volume, ranges, dynamic titration techniques, and matters such as business contacts  and/or client lists and contact information of professionals, suppliers,  contractors,  business information and plans, marketing plans, samples, specimens, formulas, prototypes, features, color schemes, layouts, designs, specifications, databases, software, code, algorithms,  including portions of the algorithm used by or with the devices, user interfaces, blueprints, drawings, training (including specialized  training in the PIR process Plaintiffs have personally  developed  for the use  of their patent-protected technology,  including  information contained  in Plaintiffs' training modules,  videos, and handbooks, Plaintiffs' methods of conducting their business for their proprietary method of insulin resensitization for the treatment of diabetes, proper techniques for treatment, instructions on device usage, dosing schedules and ranges, and Plaintiffs' detailed science and research and how to explain to patients – *e.g.*, insulin

use as hormone rather than drug), class materials, access to the encrypted licensee portal (including training materials accessible only via portal, such as guidelines, charts, job aides, and similar internal documentation), qualification procedures for providers, processes, testing, and other information related to Plaintiffs' proprietary technologies and algorithms (collectively, Plaintiffs' **"Trade Secrets"**). Further examples of such Trade Secrets include information that is not contained in training written and digital materials, including without limitation, IV insulin dosing, IV and oral glucose dosing, emergency techniques information, research, charts, dosage timing and ranges, strategies and scientific and physiological information about mechanisms and causation of results, business methods, business models, financial information, technology solutions, and unique knowledge and interpretation and application of, *inter alia*, metabolic- and diabetes-related research and methodologies, wherein this knowledge and information is not available to the public.

35.    On September 13, 2021, Well Cell Support, an affiliate of Well Cell Global to which a master license was granted with the ability to sell licenses to use the Well Cell IP to other entities, issued one license to Defendant Insulinic LA to operate at one specific office location in Lafayette, Louisiana. On November 1, 2021, Well Cell Support issued one license to Defendant Insulinic FL to operate at one specific office location in Hialeah, FL.

36.    The license agreements (the **"License Agreements"**) issued to Defendants Insulinic LA and Insulinic FL pertained only to Well Cell's patented technology, patent-pending technology, and proprietary and confidential Trade Secrets associated with such technology.

37.    As part of Plaintiffs' confidential business relationship with Defendants under both the NDAs and License Agreements, Plaintiffs provided their Trade Secrets to Defendants, including during required trainings and presentation of Plaintiffs' created materials to physicians and other

agents and employees of Defendants. These trainings include, without limitation, the trade secrets described above that included training on how to use Plaintiffs' proprietary devices and systems, which includes training on the use of Plaintiffs' confidential algorithms and software, and use with Plaintiffs' PIR methodologies. These trainings further included Plaintiffs' providing of confidential presentations, including other of Plaintiffs' Trade Secrets, such as treatment techniques, patient approaches, recordkeeping, and dosing ranges and timings, all as stated above. Upon receiving Plaintiffs' Trade Secrets, including these trainings, Defendants began providing to others not included in their license information about PIR treatments as instructed, provided, and taught by Plaintiffs.

38.     Further, the licenses issued to Defendants and the agreements signed by them contained non-compete provisions in which Calvit and others promised not to compete with Plaintiffs for a period extending two years beyond termination of the agreements; however, Plaintiffs request that the non-compete clauses be extended at least three (3) years past July 19, 2024, for an equitable tolling provision to which Plaintiffs may show themselves entitled.

39.     On June 9, 2022, after being informed about Defendant Calvit's wrongful billing practices, among other concerning matters that constituted a breach of the License Agreements, Well Cell Support issued a letter to Defendant Calvit informing him the licenses would be terminated if corrective measures were not taken.

40.     Because Defendants Calvit, Insulinic LA, and Insulinic FL did not properly address, nor cure, their breaches of the License Agreements, Well Cell Support ended its business relationship with Defendants in July 2022 and terminated the License Agreements.

41.     Despite the fact that Well Cell Support ended its business relationship with Defendants in July 2022 and terminated the License Agreements, Defendants decided to misappropriate Well

Cell's intellectual property, including the intellectual property it purchased from Diabetes Relief, in order to, *inter alia*, open competing businesses in Hawaii (Insulinic HI), Louisiana (Insulinic Gretna, and Insulinic Hammond), and Georgia (Diabetes Management operates clinics in Millen, Georgia, at Jenkins County Medical Center, and the Dorminy Diabetes Management Clinic in Fitzgerald, Georgia) and to continue to unlawfully operate existing clinics in Louisiana and Florida (Insulinic LA, Insulinic FL, and Integral) utilizing the Well Cell IP belonging exclusively to Well Cell, including the intellectual property Well Cell purchased from Diabetes Relief,.

42.    On September 7, 2022, Well Cell, through the undersigned legal counsel, sent a demand letter to Defendants, confirming that the License Agreements between the parties terminated as of July 19, 2022 due to Insulinic LA's and Insulinic FL's breach and failure to cure, as set forth in the Notice of Default, and the applicable provisions of the License Agreements, and requesting that Defendants immediately cease and desist from infringing upon Well Cell's intellectual property. Similarly, on November 29, 2022, Diabetes Relief, who transferred its intellectual property– including all rights, title, and interest thereto– to Well Cell, through the undersigned legal counsel, sent a demand letter to Defendants requesting that they cease and desist from infringing on its intellectual property. Unfortunately, Defendants failed to substantively respond to the cease-and-desist letters and continue to infringe on Well Cell, and, thus, Diabetes Relief's, rights to this day.

43.    Thus, after Plaintiffs' repeated attempts to amicably resolve their multiple claims against Defendants failed, Plaintiffs have resorted to filing the instant lawsuit in order to protect their rights and seek proper redress.

## V.    CAUSES OF ACTION

### A.    DIABETES RELIEF AND WELL CELL'S PATENT INFRINGEMENT CLAIM

44.    Plaintiffs hereby restate and re-allege every fact and allegation set forth in the preceding paragraphs and hereby incorporate them by reference as if fully set forth herein.

45.    Plaintiff Diabetes Relief is the assignee of United States Patent No. 10,533,990 (the **"'990 Patent" or** the **"Patent-in-Suit"**), which Well Cell purchased as aforesaid and Plaintiffs have all substantial rights, title, and interest to the Patent-in-Suit, including the right and standing to sue, and recover damages, for past, present, and future infringement of the patent, including both the legal and equitable rights, title, and interest upon completion of payments under the asset purchase agreement.

46.    This is an action for infringement of the Patent-in-Suit under the Patent Act, 35 U.S.C. § 271, based on Defendants' unauthorized commercial manufacture, use, importation, offer for sale, or sale of insulin infusion pumps and/or IV tubing infusion cassettes, in the United States for use with Plaintiffs' intellectual property in violation of 35 U.S.C. § 271(a).

47.    The '990 Patent, entitled "physiologic insulin-sensitivity improvement," was duly and legally issued on January 14, 2020, and names Hunter Michael Alan Carr, Scott Hepford, Carol Ann Wilson, and Stanley Tories Lewis, Jr., as the inventors. *See* **Exhibit 1**, the '990 Patent.

48.    The '990 Patent claims, among other things, to constitute an individualized intravenous exogenous insulin–based therapy for infusing insulin intravenously to a subject or a patient to improve impaired hepatic glucose processing. The therapy includes treatment sessions involving the assessment of metabolic factors, forming a subject profile, and matching the subject profile to a diabetic treatment model. Using the diabetic treatment model, a quantity and frequency of intravenous insulin bolus, dosage amounts of magnesium, and dosage amounts of potassium can

be calculated. The methods that improve impaired hepatic glucose processing in subjects and patients can simultaneously introduce separated insulin bolus from an insulin reservoir, dosage amounts of magnesium, and dosage amounts of potassium. The subject profile can create a weight management protocol that uses a metabolic enhancement, wherein the individualized intravenous exogenous insulin–based therapy produces a subject or a patient with improved cellular ATP functioning.

49.     The Patent-in-Suit was originally assigned to Diabetes Relief. Subsequently, as part of the reformation and rebranding of Diabetes Relief, Well Cell specifically bought all rights to the Patent-in-Suit when it purchased the assets of Diabetes Relief for millions of dollars on or about July 24, 2020.

50.     At all times relevant hereto, until Well Cell completed payment under the asset purchase agreement, Diabetes Relief was the legal owner and Well Cell was the equitable owner of the entire right, title, and interest in the Patent-in-Suit.

51.     Well Cell, now the legal and equitable owner of the entire right, title, interest in the Patent-in-Suit, holds an exclusive license under the Patent-in-Suit, including the right to sublicense, make, have made, use, develop, have developed, offer for sale, sell and import products covered by the Patent-in-Suit, and the right to assert, defend, maintain and enforce the Patent-in-Suit.

52.     Upon information and belief, Defendants have and continue to infringe upon the Patent-in-Suit by making, having made, using, selling, or offering for sale insulin infusion pumps and/or IV tubing infusion cassettes in the United States and importing into the United States insulin infusion pumps and IV tubing infusion cassettes that embody or use the inventions claimed in the Patent-in-Suit. The insulin infusion pumps and IV tubing infusion cassettes being utilized by Defendants infringe upon the '990 Patent because they deliver individualized intravenous exogenous insulin–

based therapy for infusing insulin intravenously to a subject or a patient to improve impaired hepatic glucose processing.

53.     Upon information and belief, Defendants have been and are inducing infringement of the 990 Patent in violation of 35 U.S.C. § 271(b) by actively and knowingly inducing others to make, use, sell, offer for sale, or import insulin infusion pumps and/or IV tubing infusion cassettes that embody or use the inventions claimed in the insulin infusion pumps and IV tubing infusion cassettes. Specifically, the Infringing Websites and the Insulinic Press Release evidence that Defendants are marketing to practitioners that they can utilize their training services as well as their insulin infusion pumps and IV tubing infusion cassettes for diabetes treatment and management for their patients at their centers in Louisiana, Florida, Hawaii, and Georgia.

54.     Upon information and belief, Defendants have been and are continuing to infringe the 990 Patent, actively and knowingly, by selling or offering to sell training services, as well as insulin infusion pumps and/or IV tubing infusion cassettes, knowing them to be especially made or especially adapted for practicing the invention of the 990 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use in violation of 35 U.S.C. § 271(c). Specifically, Insulinic LA and Insulinic FL entered into License Agreements with Well Cell Support, (an affiliate of Well Cell that was granted a master license to the 990 Patent in order to issue sublicenses to domestic users), to use Well Cell's training services as well as its proprietary insulin infusion pumps, and IV tubing infusion cassettes. Well Cell Support terminated the License Agreements with Insulinic LA and Insulinic FL effective July 19, 2022. However, Defendants continued to use, market, sell, or offer for sale the training services, insulin infusion pumps, and/or IV tubing infusion cassettes after termination of the agreements and the parties' business relationship. Well Cell sent Defendants a letter on September 7, 2022, confirming the termination

of the License Agreements and requesting that Defendants immediately cease and desist from all infringing conduct. Diabetes Relief sent Defendants a letter on November 29, 2022, requesting that Defendants cease and desist from infringing on the Patent-in-Suit. *See* **Exhibit 2**, Diabetes Relief Cease and Desist Letter dated November 29, 2022. Yet, Defendants continue to use, market, sell, or offer for sale infringing products and services that have no non-infringing use to this day.

55.    Upon information and belief, Defendants have been, and are infringing, contributing to the infringement of, and/or inducing the infringement of the Patent-in-Suit by making, using, selling, or offering for sale in the United States, or importing into the United States, including within this judicial district, training services, insulin infusion pumps and/or IV tubing infusion cassettes.

56.    Defendants have known of the existence of the Patent-in-Suit, including by virtue of their licenses thereto, and their acts of infringement have been willful and in reckless disregard for the Patent-in-Suit, without any reasonable basis for believing that they had a right to engage in the infringing conduct.

57.    Defendants' infringement has been and continues to be knowing, intentional, and willful.

58.    As a direct and proximate result of the Defendants' infringing conduct alleged herein, Diabetes Relief and Well Cell sustained, and will continue to sustain, substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. On information and belief, unless Defendants' infringing conduct is enjoined by this Court pursuant to 35 U.S.C. § 283, Defendants will continue to infringe the Patent-in-Suit. Well Cell is therefore entitled to preliminary and permanent injunctive relief restraining and enjoining Defendants' ongoing infringing conduct.

59.    In infringing upon the Patent-in-Suit, Defendants willfully and intentionally sought to misappropriate Diabetes Relief and Well Cell's intellectual property, including the intellectual property transferred from Diabetes Relief, for their own profit without bearing the cost of

developing or purchasing their own technology. Such intellectual property is worth millions of dollars, and Defendants sought to realize the same profit without investing the same amount of time, money, and creative thought, and to take away potential profits away from Plaintiffs that they would have realized but for Defendants' wrongful acts.

60.     Diabetes Relief and Well Cell have sustained, and will continue to sustain, substantial damage to the value of Patent-in-Suit in that the previously described activities of Defendants have diminished and will continue to diminish the revenues that Plaintiffs would otherwise receive for use of and license of Patent-in-Suit. In addition, Defendants have realized unlawful and unjust profits from their unauthorized and illegal use, sale, and/or offer for sale of the infringing products.

61.     By reason of the patent infringement described above, Diabetes Relief and Well Cell are entitled to their actual damages and to Defendants' profits attributable to their misappropriation of Diabetes Relief's and Well Cell's protected works, including such protected works transferred from Diabetes Relief, pursuant to 35 U.S.C. § 284, in an amount to be proved at trial, and all other relief allowed under the Patent Act.

62.     Including in view of Defendants' wanton and willful acts, this case is exceptional and, therefore, Plaintiffs are entitled to an award of attorney fees pursuant to 35 U.S.C. § 285.

## B.     DIABETES RELIEF AND WELL CELL'S CLAIMS OF VIOLATIONS OF THE DEFEND TRADE SECRETS ACT

63.     Plaintiffs hereby restate and re-allege every fact and allegation set forth in the preceding paragraphs and hereby incorporate them by reference as if fully set forth herein.

64.     Including as set forth above, Plaintiffs possess numerous proprietary, valuable, and confidential Trade Secrets developed as part of Plaintiffs' business operations.

65.     Plaintiffs' Trade Secrets, and the information and processes contained therein, had, and continued to have, significant economic value that derives from, *inter alia*, the fact that the

18

information was not generally known or readily ascertainable by third parties, including Plaintiffs' competitors, such as Defendants. If Plaintiffs' competitors had access to this information, they would be able to profit without undertaking the significant efforts and financial investments that Plaintiffs undertook over the years to develop and amass the Trade Secrets, including, at least with respect to Plaintiffs' business contacts that comprise years of discovering, meeting with, interviewing, and doing business with each and every business contact and subsequent compilation of such information.

66.     Additionally, Well Cell, as part of its licenses with Defendants, specifically states that Plaintiffs "developed a series of processes, technologies, techniques, and strategies to assist physicians in their treatment of diabetes and other metabolism-related deficiencies and conditions" and requiring each signatory Defendant "agree[s] that it will protect all intellectual property rights belonging to [Well Cell] as described herein, and that it and its agents and employees will treat all procedures, improvements, data, and know-how as confidential trade secrets of [Well Cell]." Likewise, in the NDAs signed by Defendants, Well Cell clearly states that certain confidential information would be disclosed, including "the names and telephones of investors, borrowers, lenders, agents, brokers, banks, lending corporations, individuals, and/or trusts, or buyers and sellers" and that the signatory Defendants agree to keep such information confidential.

67.     Thus, Plaintiffs have put in place more than reasonable measures to protect the secrecy of their Trade Secrets. For example, Well Cell had Defendant Calvit, who is the principal member behind Defendants Insulinic, Insulinic LA, Insulinic FL, Insulinic HI, Insulinic Gretna, and Insulinic Hammond, sign NDAs requiring, *inter alia*, that each of them keep all confidential information revealed to them pursuant to the agreement "confidential" and not "disclose, reveal, or make use of any information … nor to do business with any of the revealed contacts without

the written consent of the introducing party or parties." Plaintiffs' Trade Secrets were only shared with individuals under confidentiality agreements. Further, including as noted above, as part of the License Agreements by and between Plaintiffs and certain of Defendants (including Insulinic FL, Insulinic LA, and Insulinic HI), the signatory Defendant of said license is likewise prohibited from disclosing Plaintiffs' confidential information, including their Trade Secrets, to any third party, and specifically requires that the signatory Defendant not "disclose, reveal, or make use of any information during discussion or observation regarding methods, concepts, ideas, product/services, or proposed new products or services, nor to do business with any of the revealed contacts without the written consent of" Well Cell.

68.     Plaintiffs' Trade Secrets are related to products and/or services used in, and intended for use in, interstate commerce, including as evidenced by the multiple states in which Plaintiffs have licensees. The Trade Secrets were shared with at least Defendant Calvit and with Defendant Calvit's representatives and employees, such as Dr. LeLeux, who received training from Well Cell between the states of Texas, Louisiana, Florida, and Hawaii and the Trade Secrets themselves consist of, *inter alia*, individuals and entities in the states of Texas, Louisiana, Florida, Hawaii, and other states, and were developed through the interstate activity of Plaintiffs. Plaintiffs sought investments and clients from around the country and sought to develop licensing agreements for diabetes clinics that would market and sell Plaintiffs' products across state lines, around the country, and around the globe.

69.     Plaintiffs disclosed the Trade Secrets to at least Defendant Calvit under the context of the NDAs and training services, and, to a limited extent, to certain Defendants under the context of the License Agreements, and Defendants took the Trade Secrets for themselves and their other and related business entities without Plaintiffs' consent, and in violation of their duties under the

respective NDA and license to compete with Plaintiffs after the termination of the parties' business relationships which removed any consent of Plaintiffs to Defendants' use of the Trade Secrets which existed under such agreements. Defendant Calvit misappropriated Plaintiffs' trade secrets for his own benefit to open a new competing business in Hawaii in concert with Defendant Desgraves and Dr. LeLeux. Defendant Calvit, including in concert with Defendant Desgraves, stole the contact information of at least physician, vendors, and investors and Plaintiffs' other Trade Secrets related to at least its methodology, processes, procedures, and training for the utilization and implementation of Plaintiffs' proprietary method of insulin resensitization for the treatment of diabetes to run their competing business, Insulinic HI, including with the assistance of Dr. LeLeux. Defendants Calvit and Desgraves also used Plaintiffs' Trade Secrets to run their competing businesses Insulinic LA and Insulinic FL, along with Dr. LeLeux's assistance.

70.      Plaintiffs did not know what Defendants were doing and Defendants knew that Plaintiffs were unaware of their unlawful conduct. Accordingly, Defendants misappropriated Plaintiffs' trade secrets.

71.      Defendants knew that they did not have Plaintiffs' consent to do so, and Defendants knew that they were violating their duties under their respective NDAs and Licensing Agreements.

72.      Plaintiffs have suffered, and will continue to suffer, irreparable harm for which monetary damages are inadequate as a direct and proximate result of Defendants' misappropriation of Plaintiffs' Trade Secrets.

73.      Plaintiffs have also suffered losses as a direct and proximate result of Defendants' actions in the form of lost profits that Plaintiffs would have gained but for Defendants' misappropriation of trade secrets for use in their competing businesses, and damage to the value of Plaintiffs' Trade Secrets, among other direct and consequential damages.

74.     Defendants misappropriated Plaintiffs' Trade Secrets willfully and maliciously, and, thus, Plaintiffs request an award of exemplary damages in an amount equal to twice the award of any other monetary damages pursuant to 18 U.S.C. § 1836(b)(3)(C).

75.     Defendants misappropriated Plaintiffs' Trade Secrets willfully and maliciously, and, thus, Plaintiffs request their reasonable attorney's fees in this action pursuant to 18 U.S.C. § 1836(b)(3)(D).

## C.     DIABETES RELIEF AND WELL CELL'S CLAIMS OF VIOLATIONS OF THE TEXAS UNIFORM TRADE SECRETS ACT

76.     Plaintiffs hereby restate and re-allege every fact and allegation set forth in the preceding paragraphs and hereby incorporate them by reference as if fully set forth herein.

77.     Including as set forth above, Plaintiffs possess numerous proprietary, valuable, and confidential Trade Secrets developed as part of Plaintiffs' business operations.

78.     Plaintiffs had in place reasonable measures to protect the secrecy of the aforementioned Trade Secrets. For example, Well Cell had Defendant Calvit, who is the principal member behind Defendants Insulinic, Insulinic LA, Insulinic FL, Insulinic HI, Insulinic Gretna, and Insulinic Hammond, and Dr. LeLeux sign NDAs requiring that each of them keep all confidential information revealed to them pursuant to the agreement "confidential" and not "disclose, reveal, or make use of any information … nor to do business with any of the revealed contacts without the written consent of the introducing party or parties." Plaintiffs' trade secrets were only shared with individuals under confidentiality agreements.

79.     Plaintiffs disclosed the Trade Secrets to Defendant Calvit and Dr. LeLeux under the context of the Non-Disclosure Agreements and Defendants took the Trade Secrets for themselves and their other business entities without Well Cell's consent, and in violation of their duties under the Non-Disclosure Agreements to compete with Plaintiffs after the termination of the parties' business

relationships. Defendant Calvit misappropriated Plaintiffs' Trade Secrets for his own benefit to open a new competing business in Hawaii in concert with Dr. LeLeux. Defendant Calvit, including in concert with Defendant Desgraves, stole the contact information of physician, vendors, and investors and Plaintiffs' other Trade Secrets related to its methodology for the utilization and implementation of their proprietary method of insulin resensitization for the treatment of diabetes to run their competing business, Insulinic HI with the assistance of Dr. LeLeux. Defendants Calvit and Desgraves also used the Contacts to run their competing businesses Insulinic LA and Insulinic FL, along with Dr. LeLeux's assistance.

80.    Plaintiffs did not know what Defendants were doing and Defendants knew that Plaintiffs were unaware of their unlawful conduct. Accordingly, Defendants misappropriated Plaintiffs' Trade Secrets.

81.    Defendants knew that they did not have Plaintiffs' consent to do so, and Defendants knew that they were violating their duties under the Non-Disclosure Agreements.

82.    Including because Plaintiffs' Trade Secrets derive significant independent economic value, whether actual and/or potential, from not being generally known to the public or competitors, or to other persons who can obtain economic value from their use or disclosure, such as Defendants, and because Plaintiffs derive substantial business advantage and significant economic benefit from maintaining the ownership and confidentiality of their Trade Secrets; if this information, which Plaintiffs have maintained as confidential Trade Secrets, were disclosed to such competitors, public, or other persons, such disclosure would cause severe economic harm and competitive disadvantage to Plaintiffs. Thus, due to Defendants' misappropriation, Plaintiffs have suffered, and will continue to suffer, irreparable harm for which monetary damages are inadequate as a direct and proximate result of Defendants' misappropriation of their Trade Secrets.

83.     Plaintiffs have also suffered losses as a direct and proximate result of Defendants' actions in the form of lost profits that Plaintiffs would have gained but for Defendants' misappropriation of Trade Secrets for use in their competing businesses, and damage to the value of their Trade Secrets, among other direct and consequential damages.

84.     Defendants misappropriated Plaintiffs' Trade Secrets willfully and maliciously, thus Plaintiffs request an award of exemplary damages in an amount equal to twice the award of any other monetary damages pursuant to Tex. Civ. Prac. & Rem. Code § 134A.004.

85.     Defendants misappropriated Plaintiffs' Trade Secrets willfully and maliciously, thus Plaintiffs request their reasonable attorney's fees in this action pursuant to Tex. Civ. Prac. & Rem. Code § 134A.005.

**D.      DIABETES RELIEF AND WELL CELL'S CLAIMS OF UNFAIR COMPETITION IN VIOLATION OF TEXAS COMMON LAW**

86.     Plaintiffs hereby restate and re-allege every fact and allegation set forth in the preceding paragraphs and hereby incorporate them by reference as if fully set forth herein.

87.     Defendants' acts, including as alleged herein, constitute infringement and are likely to cause confusion and/or deceive consumers into falsely believing that there exists an affiliation, connection, or association between the Infringing Clinics, and/or Defendants, and Plaintiffs. These acts also constitute unfair competition.

88.     Defendants' acts, including as alleged herein, have caused, and will continue to cause, Plaintiffs irreparable harm for which Plaintiffs have no adequate remedy at law, in that (i) Plaintiffs have unique and valuable property rights in the Well Cell IP; (ii) Defendants' patent infringement, trademark infringement, and trade secret misappropriation constitutes a substantial interference with Plaintiffs' goodwill and customer relationships; and (iii) Defendants' activities, and the harm

resulting to Plaintiffs, continues. Therefore, Plaintiffs are entitled to preliminary and permanent injunctive relief.

**E.    DIABETES RELIEF AND WELL CELL'S CLAIMS OF UNFAIR COMPETITION BY MISAPPROPRIATION IN VIOLATION OF TEXAS COMMON LAW**

89.    Plaintiffs hereby restate and re-allege every fact and allegation set forth in the preceding paragraphs and hereby incorporate them by reference as if fully set forth herein.

90.    The acts complained of herein constitute unfair competition by misappropriation, in violation of the common law of the State of Texas and elsewhere.

91.    Plaintiffs created the Well Cell IP and the goods and services on which they are authorized to appear in the United States through extensive time, labor, skill, and money.

92.    Defendants' use of the Well Cell IP in its unauthorized Infringing Clinics and Infringing Website creates competition with Plaintiffs, thereby conferring Defendants with a special advantage in that competition because Defendants are burdened with little or none of the expense incurred by Plaintiffs.

93.    As a direct and proximate result of Defendants' unfair competition, Plaintiffs have suffered irreparable harm to the valuable Well Cell IP and their reputation in the industry. Unless Defendants' conduct is restrained, Plaintiffs will continue to be irreparably harmed.

94.    Plaintiffs have no adequate remedy at law that will compensate for the continued and irreparable harm they will suffer if Defendants' acts are allowed to continue.

95.    As a direct and proximate result of Defendants' unfair competition, Plaintiffs have suffered damages, including lost profits and damages to the valuable Well Cell IP and other damages in an amount to be proved at trial.

**F.    DIABETES RELIEF AND WELL CELL'S CLAIMS OF UNJUST ENRICHMENT IN VIOLATION OF TEXAS COMMON LAW AGAINST DEFENDANTS**

**DESGRAVES, INSULINIC, INSULINIC HI, INSULINIC GRETNA, INSULINIC HAMMOND, DIABETES MANAGEMENT, AND INTEGRAL**

96.     Plaintiffs hereby restate and re-allege every fact and allegation set forth in the preceding paragraphs and hereby incorporate them by reference as if fully set forth herein.

97.     With respect to at least Defendants Desgraves, Insulinic, Insulinic HI, Insulinic Gretna, Insulinic Hammond, Diabetes Management, and Integral, by operating the Infringing Clinics and Infringing Website bearing Diabetes Relief and Well Cell's valuable Well Cell IP, these defendants have been unjustly enriched to Diabetes Relief and Well Cell's detriment in violation of the common law of Texas and elsewhere.

98.     Under principles of equity, Diabetes Relief and Well Cell are entitled to damages, restitution and/or disgorgement of all ill-gotten gains of these defendants.

**G.     BREACH OF CONTRACT CLAIM BY WELL CELL SUPPORT AGAINST DEFENDANT INSULINIC LA AND DEFENDANT SHAWN CALVIT**

99.     Plaintiffs hereby restate and re-allege every fact and allegation set forth in the preceding paragraphs and hereby incorporate them by reference as if fully set forth herein.

100.    Well Cell Support entered into a written contract with Defendant Insulinic LA on or about September 13, 2021, wherein Well Cell Support granted Insulinic LA a license for the use of Well Cell's IP, including its patented, and patent-pending, treatment modalities for diabetes, including pumps, and IV tubing for insulin resensitization as covered by the Patent-in-Suit (**"Insulinic LA License Agreement"**).

101.    Well Cell Support fulfilled its obligations under the Insulinic LA License Agreement by granting Insulinic LA a license to use its patent-protected medical technology for the treatment of diabetes, providing Insulinic LA with insulin pumps and IV tubing, and providing specific medical training to Insulinic LA's personnel for the use of its specialized medical technology.

102.    Defendant Calvit is and was at all times the alter-ego of Insulinic LA as specifically alleged herein. To the extent the contract is interpreted not to be between Well Cell Support and Defendant Calvit individually, he should still be liable on an alter-ego theory and any other result would be unjust and promote a fraud and an injustice.

103.    On or about June 9, 2022, Well Cell Support put Insulinic LA on notice that it was in default under the Insulinic LA License Agreement due to its failure to abide by the terms of the written contract related to improper billing practices and reporting, among other matters. Insulinic LA failed to cure its default within thirty (30) days, thus the Insulinic LA License Agreement was terminated effective July 19, 2022, and, as stated above, certain provisions remained effective for an additional three (3) years; however, Plaintiffs request a further extension of the non-compete clauses based on the doctrine of equitable tolling.

104.    Notwithstanding, Well Cell Support's termination of the Insulinic LA License Agreement, Insulinic LA continued to use the training information, insulin pumps and IV tubing when it no longer had a license to do so in breach of the Insulinic LA License Agreement. Well Cell Support has also demanded the return of the insulin pumps and Insulinic LA has refused to return them in violation of the written terms of the Insulinic LA License Agreement.

105.    The Insulinic LA License Agreement also contains a non-competition clause which states that Insulinic LA, its owner(s) and any key personnel, including Defendant Calvit and Defendant Desgraves, and Dr. LeLeux, "shall not control, consult to, or be employed by another diabetes or metabolic disorder treatment center or clinic, either by soliciting any of its accounts or by operating within any of LICENSOR's particular areas of practice" throughout the duration of the agreement and for a period of two years after the termination of the agreement. Thus, Defendants Insulinic

LA, Calvit, and Desgraves, and Dr. LeLeux, are prohibited from competing with Well Cell Support until at least July 19, 2024.

106.    Yet, in breach of the Insulinic LA License Agreement, Defendants Insulinic LA, Calvit, and Desgraves, and Dr. LeLeux, continue to control, consult to, or be employed by diabetes or metabolic disorder treatment centers or clinics that compete with Well Cell Support in its areas of practice, including, but not limited to, Insulinic LA, Insulinic FL, Insulinic HI, Insulinic Hammond, Insulinic Gretna, and Georgia Insulinic entities.

107.    Each of these breaches of contract are material breaches.

108.    As a direct and proximate result of Defendants Insulinic LA, Calvit, and Desgraves breaching the Insulinic LA License Agreement, Well Cell Support incurred legally compensable damages, including direct and consequential damages, attorneys' fees, costs, and other legal injuries, all of which are in excess of the minimal jurisdictional limits of this Court.

## H.    BREACH OF CONTRACT CLAIM BY WELL CELL SUPPORT AGAINST DEFENDANT INSULINIC FL AND DEFENDANT SHAWN CALVIT

109.    Plaintiffs hereby restate and re-allege every fact and allegation set forth in the preceding paragraphs and hereby incorporate them by reference as if fully set forth herein.

110.    Well Cell Support entered into a contract with Defendant Insulinic FL on or about September 13, 2021, wherein Well Cell Support granted Insulinic FL a license for the use of Well Cell's IP, including its patented, and patent-pending, treatment modalities for diabetes, including pumps, kits, and IV tubing for insulin resensitization as covered by the Patent-in-Suit (**"Insulinic FL License Agreement"**).

111.    Well Cell Support fulfilled its obligations under the Insulinic FL License Agreement by granting Insulinic FL a license to use its patent-protected medical technology for the treatment of

diabetes, providing Insulinic FL with insulin pumps and IV tubing, and providing specific medical training to Insulinic FL's personnel for the use of its specialized medical technology.

112.    Defendant Calvit is and was at all times the alter-ego of Insulinic FL as specifically alleged herein. To the extent the contract is interpreted not to be between Well Cell Support and Defendant Calvit individually, he should still be liable on an alter-ego theory and any other result would be unjust and promote a fraud and an injustice.

113.    On or about June 9, 2022, Well Cell Support put Insulinic FL on notice that it was in default under the Insulinic FL License Agreement due to its failure to abide by the terms of the written contract related to improper billing practices and reporting, among other matters. Insulinic FL failed to cure its default within thirty (30) days, thus the Insulinic FL License Agreement was terminated effective July 19, 2022.

114.    Notwithstanding, Well Cell Support's termination of the Insulinic FL License Agreement, Insulinic FL continued to use the insulin pumps and IV tubing when it no longer had a license to do so in breach of the Insulinic FL License Agreement. Well Cell Support has also demanded the return of the insulin pumps and Insulinic FL has refused to return them in violation of the written terms of the Insulinic FL License Agreement.

115.    The Insulinic FL License Agreement also contains a non-competition clause which states that Insulinic FL, its owner(s) and any key personnel, including Defendant Calvit and Defendant Desgraves, and Dr. LeLeux, "shall not control, consult to, or be employed by another diabetes or metabolic disorder treatment center or clinic, either by soliciting any of its accounts or by operating within any of LICENSOR's particular areas of practice" throughout the duration of the agreement and for a period of two years after the termination of the agreement. Thus, Defendants Insulinic

FL, Calvit, and Desgraves, and Dr. LeLeux, are prohibited from competing with Well Cell Support until at least July 19, 2024.

116.    Yet, in breach of the Insulinic FL License Agreement, Defendants Insulinic LA, Calvit, and Desgraves, and Dr. LeLeux, continue to control, consult to, or be employed by diabetes or metabolic disorder treatment centers or clinics that compete with Well Cell Support in its areas of practice, including but not limited to Insulinic LA, Insulinic FL, Insulinic HI, Insulinic Hammond, Insulinic Gretna, and the newly formed while this litigation has been underway, Insulinic clinics in Georgia and Florida.

117.    Each of these breaches of contract are material breaches.

118.    As a direct and proximate result of Defendants Insulinic FL, Calvit, and Desgraves breaching the Insulinic FL License Agreement, Well Cell Support incurred legally compensable damages including direct and consequential damages, attorneys' fees, costs, and other legal injuries, all of which are in excess of the minimal jurisdictional limits of this Court.

I.    **DIABETES RELIEF AND WELL CELL'S CLAIMS OF TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND FALSE DESIGNATION OF ORIGIN IN VIOLATION OF SECTION 43(A) OF THE LANHAM ACT**

119.    Plaintiffs hereby restate and re-allege every fact and allegation set forth in the preceding paragraphs and hereby incorporate them by reference as if fully set forth herein.

120.    Well Cell, and its predecessor, Diabetes Relief, have, for many years, expended considerable sums of money, as well as the time and effort of its employees and agents, to purchase the rights to and further develop the marks "Diabetes Relief," "$DR_x$," and "Physiologic Insulin Resensitization," to advertise, and to create websites, all of which present Plaintiffs and the services they provide in a favorable light to promote sales and services to its customers. *See* **Exhibit 3**, for the trademark $DR_x$ belonging to Well Cell. Well Cell, and its predecessor, Diabetes

Relief, have used these marks on a nationwide basis, in fact on a worldwide basis, since at least February 1, 2016, in various channels of commerce, including selling and marketing treatments for diabetes and other metabolic disorder and providing training and teaching services related to these treatments.

121.    Defendants engage in competing businesses in Florida, Louisiana, Hawaii, and Georgia.

122.    Defendants deliberately and intentionally used Diabetes Relief's and Well Cell's marks, including those marks transferred from Diabetes Relief, which included the marks "Diabetes Relief," "$DR_x$," and "Physiologic Insulin Resensitization," and including, but not limited to, their use on the insulinic.com website and on the Insulinic Facebook page, knowing that these were marks exclusively belonging to Plaintiffs and previously used by Plaintiffs in interstate commerce throughout the United States and abroad. *See* **Exhibit 4**, printouts of the website insulinic.com as of September 28, 2022; and **Exhibit 5**, printouts from the Insulinic Facebook page and a video that displays on the Insulinic Facebook page as of September 29, 2022.

123.    Defendants' use of Plaintiffs' marks, in interstate commerce, has deceived the public into thinking that Diabetes Relief and/or Well Cell was the sponsor or origin of the diabetes treatment services offered by Defendants in their Insulinic businesses.

124.    Defendants' use of Diabetes Relief's and Well Cell's marks, including those marks transferred from Diabetes Relief, including the marks "Diabetes Relief,", "$DR_x$," and "Physiologic Insulin Resensitization," in connection with their competing diabetes treatment businesses was deliberate and intentional.

125.    The aforementioned conduct of Defendants was specifically designed to divert consumers and customers of Plaintiffs' business to Defendants' businesses.

126.     Defendants' use of the phrases or marks "Diabetes Relief," "DR$_x$," and "Physiologic Insulin Resensitization," was without Plaintiffs' consent nor authorization.

127.     Defendants' use of the phrases or marks "Diabetes Relief," "DR$_x$," and "Physiologic Insulin Resensitization," in connection with their competing businesses has damaged and will continue to damage Plaintiffs' business and reputation by means of lost sales and diminution of goodwill and business reputation.

128.     Defendants' use of the phrases or marks "Diabetes Relief," "DR$_x$," and "Physiologic Insulin Resensitization," in connection with their competing businesses did cause, and is likely to continue to cause confusion, mistake, has, and will deceive third-parties as to the affiliation, connection or association of Defendants with Plaintiffs and as to whether or not Plaintiffs have anything to do with the origin, sponsorship, services, or other commercial activities of the Defendants.

129.     Defendants' aforementioned use of the phrases or marks "Diabetes Relief," "DR$_x$," and "Physiologic Insulin Resensitization," misrepresented the nature, characteristics, qualities, and/or geographic origin of Defendants' services and commercial activities.

130.     Defendants have violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that they have in connection with Defendants' goods or services, used the phrases or marks "Diabetes Relief," "DR$_x$," and "Physiologic Insulin Resensitization," which represent a false designation of origin, false or misleading description, and/or a misrepresentation of fact likely to cause confusion, mistake, or deception both as to the affiliation, connection, or association of Defendants with Plaintiffs, and as to the origin, sponsorship, association, or approval of the Defendants' services, goods, and commercial activities by Plaintiffs.

131.     The Defendants' acts constitute the use in commerce of false designations of origin and false and/or misleading descriptions or representations, tending to falsely or misleadingly describe

and/or represent the Defendants' products and services as those of Plaintiffs, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

132.    Defendants have violated 15 U.S.C. § 1125(a)(1)(B) in that their commercial advertising or promotion for Defendants' businesses misrepresents the nature, characteristics, qualities, and/or geographic origin of Plaintiffs' and Defendants' goods, services, or commercial activities.

133.    Defendants' wrongful acts will continue unless and until enjoined by this Court.

134.    Defendants' acts have caused and will continue to cause irreparable injury to Plaintiffs. Plaintiffs have no adequate remedy at law and are thus damaged in an amount yet to be determined.

135.    Plaintiffs are entitled to the recovery of damages from the Defendants jointly and severally, pursuant to 15 U.S.C. § 1125(a). Damages include the actual damages sustained by Plaintiffs, Defendants' profits, and the costs of this action together with Plaintiffs' reasonable and necessary attorneys' fees. In the alternative, Plaintiffs are entitled to recover damages in such sums as the Court may find just according to the circumstances of the case.

## J.    DIABETES RELIEF AND WELL CELL'S CLAIMS OF COMMON LAW TRADEMARK INFRINGEMENT UNDER TEXAS LAW

136.    Plaintiffs hereby restate and re-allege every fact and allegation set forth in the preceding paragraphs and hereby incorporate them by reference as if fully set forth herein.

137.    Plaintiffs own all rights, title, and interest in and to the marks "Diabetes Relief," "DR$_x$," and "Physiologic Insulin Resensitization," including all common law rights in such marks, including by virtue of Well Cell's purchase of such rights, title, and interest under the asset purchase agreement.

138.    Defendants, without authorization from Plaintiffs, have used, and are continuing to use, spurious designations that are identical to, substantially indistinguishable from, or confusingly similar to Plaintiffs' marks.

139.    The foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause confusion, mistake, and deception among consumers, the public, and the trade as to whether Defendants' products and/or services originate from, or are affiliated with, sponsored by, or endorsed by Diabetes Relief and/or Well Cell.

140.    Defendants' acts constitute trademark infringement in violation of the common law of the State of Texas.

141.    The acts of Defendants alleged above were committed willfully, with full knowledge of Diabetes Relief and Well Cell's rights, which include those transferred from Diabetes Relief, and with the intention of deceiving and misleading the public and causing harm to Plaintiffs.

142.    Upon information and belief, Defendants have profited from their unlawful actions and have been unjustly enriched to the detriment of Plaintiffs. Defendants' unlawful actions have caused Plaintiffs damages in an amount to be determined at trial.

143.    As a result of Defendants' unlawful acts as described herein, Plaintiffs have suffered and will continue to suffer irreparable harm to their goodwill and business reputation and Plaintiffs have no adequate remedy at law.

144.    Defendants will continue their unlawful acts unless Defendants are preliminarily and permanently enjoined from their unlawful conduct.

145.    As a direct and proximate result of Defendants' unlawful acts, Plaintiffs have suffered and will continue to suffer damages in an amount yet to be determined.

146.    In light of the foregoing, Plaintiffs are entitled to injunctive relief prohibiting Defendants from using Plaintiffs' marks, and to recover all damages, including their reasonable and necessary attorney's fees that Plaintiffs have sustained and will sustain, and all gains, profits, and advantages

obtained by Defendants as a result of their infringing acts alleged above in an amount not yet known, and the costs of this action.

## VI.  JURY DEMAND

147.    Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs respectfully request a trial by jury on all issues so triable.

## VII.  PRAYER

**WHEREFORE,** Plaintiffs Well Cell Global LLC, Well Cell Support LLC, and Diabetes Relief LLC request that Defendants be cited to appear and answer, and that on final trial, Plaintiffs have the following judgement:

1.  That Defendants be ordered to pay Plaintiffs all damages, including future damages, that Plaintiffs have sustained or will sustain as a result of the acts complained of herein, and that Plaintiffs be awarded any profits derived by Defendants as a result of said acts, or as determined by said accounting;

2.  Adjudging that Defendants have infringed, actively induced infringement of, and contributorily infringed the Patent-in-Suit, in violation of 35 U.S.C. § 271(a), (b), and (c);

3.  Granting an injunction temporarily, preliminarily, and permanently enjoining Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons or entities from infringing, contributing to the infringement of, or inducing infringement of the Patent-in-Suit.

4.  Ordering Defendants to account and pay damages adequate to compensate Plaintiff for Defendants' infringement of the Patent-in-Suit, including for any infringing acts not

presented at trial and pre-judgment and post-judgment interest and costs, pursuant to 35 U.S.C. § 284;

5.   Ordering an accounting for any infringing sales not presented at trial and an award by the court of additional damages for any such infringing sales;

6.   Ordering that the damages award for the patent infringements be increased up to three times the actual amount assessed, pursuant to 35 U.S.C. § 284;

7.   Declaring this case exceptional and awarding Plaintiffs their reasonable attorneys' fees, pursuant to 35 U.S.C. § 285;

8.   Granting an injunction temporarily, preliminarily, and permanently enjoining the Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise, from disclosing Plaintiffs' trade secrets, including the Contacts pursuant to Tex. Civ. Prac. & Rem. Code § 134A.003 and 18 U.S.C. § 1836(b)(3)(A);

9.   Granting an injunction temporarily, preliminarily, and permanently enjoining Insulinic LA, its owner(s), and any key personnel, including Defendant Calvit and Defendant Desgraves from competing with Plaintiffs by controlling, consulting to, or being employed by another diabetes or metabolic disorder treatment center or clinic, either by soliciting any of Plaintiffs' accounts or by operating within any of Plaintiffs' areas of practice for an equitable period of time;

10.  Granting an injunction temporarily, preliminarily, and permanently enjoining Insulinic FL, its owner(s), and any key personnel, including Defendant Calvit and Defendant

Desgraves from competing with Plaintiffs by controlling, consulting to, or being employed by another diabetes or metabolic disorder treatment center or clinic, either by soliciting any of Plaintiffs' accounts or by operating within any of Plaintiffs' areas of practice until for an equitable period of time;

11. Granting an injunction temporarily, preliminarily, and permanently enjoining the Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise, from using the marks "Diabetes Relief," "DR$_x$," and "Physiologic Insulin Resensitization;"

12. Judgment awarding Plaintiffs their actual damages as a result of Defendants' infringement of its marks, all profits of Defendants as a result of their use of Plaintiffs' marks, and Plaintiffs' reasonable and necessary attorney's fees pursuant to 15 U.S.C. § 1125(a), (c), Tex. Bus. & Com. Code § 16.103, and Texas common law;

13. Judgment be entered against Defendants and in favor of Plaintiffs for their actual damages on all of its claims;

14. Lost profits;

15. Exemplary damages;

16. Pre-judgment interest as provided by law;

17. Post-judgment interest as provided by law;

18. Reasonable attorneys' fees;

19. Costs of suit;

20. All other relief to which Plaintiffs may show themselves entitled, either at law or in equity, general and special, under the facts set forth in their claims.

Dated:  March 1, 2024                    Respectfully submitted,

By:/s/ *Lema Mousilli*
LEMA MOUSILLI
Attorney-in-charge
State Bar No. 24056016
S.D. Texas Bar No. 1358290
**LLOYD & MOUSILLI, PLLC**
11807 Westheimer Road
Suite 550 PMB 944
Houston, TX 77077
Tel: (512) 609-0059
Fax: (413) 473-6164
litigation@lloydmousilli.com
**ATTORNEYS FOR PLAINTIFFS**
**WELL CELL GLOBAL LLC,**
**WELL CELL SUPPORT LLC, AND**
**DIABETES RELIEF LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on all counsel of record, pursuant to the District's ECF service rules on **March 1, 2024,** *via electronic filing system*.

Tom Van Arsdel
Attorney-In-Charge
Matthew A. Pyle
WINSTEAD PC
600 Travis, Suite 5200
Houston, Texas 77002
Michael Karson
Grant Tucker
WINSTEAD PC
2728 N. Harwood St., Suite 500
Dallas, Texas 75201
*tvanarsdel@winstead.com*
*mpyle@winstead.com*
*mkarson@winstead.com*
*gtucker@winstead.com*
Attorneys for Defendants Shawn Paul Calvit,
Dr. Patrick Dale LeLeux, and Insulinic of Lafayette LLC

/s/ *Lema Mousilli*
Lema Mousilli

PLAINTIFFS' THIRD AMENDED COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF