**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **WELL CELL GLOBAL LLC, WELL CELL SUPPORT LLC, AND DIABETES RELIEF LLC,** | § § § § | |
| *Plaintiffs,* | § § | |
| **V.** | § § § | |
| **SHAWN PAUL CALVIT, MARC PIERRE DESGRAVES IV, CHARLES ALEXANDER ELLIOTT, INSULINIC LLC, INSULINIC OF LAFAYETTE LLC, INSULINIC OF HIALEAH LLC, INSULINIC HAWAII, LLC, INSULINIC OF GRETNA, LLC, INSULINIC OF HAMMOND, LLC, DIABETES MANAGEMENT CLINIC, LLC, and INTEGRAL MEDICINE GROUP, INC.,** | § § § § § § § § § § § § § § | **CIVIL CASE NO. 4:22-cv-03062-LHR** <br><br> **(JURY DEMANDED)** |
| *Defendants.* | § | |

---

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
ENTRY OF FINAL JUDGMENT**

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COME NOW**, Plaintiffs, **Well Cell Global LLC, Well Cell Support LLC, and Diabetes Relief LLC** ("**Plaintiffs**"), in the above-styled matter and files this *Plaintiffs' Motion for Summary Judgment and Entry of Final Judgment* ("**Motion**"), and, including pursuant to this Honorable Court's April 16, 2025 Order Granting Plaintiffs' motion for summary judgment (ECF No. 221), hereby respectfully move this Honorable Court to enter Final Judgment in this matter as set forth in attached Exhibit A, disposing of all claims against and between all parties in this matter, and, in support thereof, respectfully show this Honorable Court the following:

i

## T<small>ABLE OF</small> C<small>ONTENTS</small>

*Table of Contents* ........................................................................................................ *ii*

*Table of Authorities* .................................................................................................. *iii*

   **Cases**...............................................................................Error! Bookmark not defined.

   **Statutes**.........................................................................Error! Bookmark not defined.

   **Rules**.............................................................................Error! Bookmark not defined.

   **Treatises**......................................................................Error! Bookmark not defined.

*I.*   *Statement of the Case*.......................................................................................... *1*

*II.*   *Summary of the Argument* .................................................................................. *2*

*III.*   *Standard of Review* .............................................................................................. *5*

*IV.*   *Arguments and Authorities*................................................................................ *9*

   **A.**   **Legal Principles** ....................................................................................... **9**

      1.   Remedies for Trade Secret Misappropriation .................................. 9

      2.   Remedies for Trademark Infringement and Unfair Competition .................................. 12

   **B.**   **Plaintiffs Are Entitled To Damages For The Remaining Defendants' Trade Secret Misappropriation** ..................................................................................... **16**

      1.   Plaintiffs are entitled to actual damages. .................................................... 16

<u>T</u><small>ABLE OF</small> <u>A</u><small>UTHORITIES</small>

<u>Cases</u>

*Alexander v. Eeds*,
   392 F.3d 138 (5th Cir. 2004) ................................................................................. 10

*Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*,
   343 F.3d 401 (5th Cir. 2003) ................................................................................. 9

*Am. Trigger Pullers LLC v. Wylde*,
   No. CV H-19-2694, 2020 WL 1809724 (S.D. Tex. Apr. 9, 2020) ..................... 9, 10

*Amazing Spaces, Inc. v. Metro Mini Storage*,
   608 F.3d 225 (5th Cir. 2010) ................................................................................. 19

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .......................................................................................... 6, 8

*Axxiom Mfg., Inc. v. McCoy Invs., Inc.*,
   846 F. Supp. 2d 732 (S.D. Tex. 2012) ................................................................. 8

*Baker v. DeShong*,
   821 F.3d 620 (5th Cir. 2016) ................................................................................. 23

*Bandag, Inc. v. Al Bolser's Tire Stores*,
   750 F.2d 903 (Fed. Cir. 1984) .............................................................................. 20

*Baranowski v. Hart*,
   486 F.3d 112 (5th Cir. 2007) ................................................................................. 8

*Bazan ex rel. Bazan v. Hidalgo County*,
   246 F.3d 481 (5th Cir. 2001) ................................................................................. 6

*Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*,
   550 F.3d 465 (5th Cir. 2008) ................................................................................. 21

*Bennett v. Reynolds*,
   315 S.W.3d 867 (Tex. 2010) .......................................................................... 16, 26

*Bohnsack v. Varco, L.P.*,
   668 F.3d 262 (5th Cir. 2012) ................................................................................. 13

*Boston Prof'l Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*,
   597 F.2d 71 (5th Cir. 1979) ................................................................................... 20

*Boudreaux v. Swift Transp. Co.*,
   402 F.3d 536 (5th Cir. 2005) ................................................................................. 7

*Burbage v. Burbage*,
   447 S.W.3d 249 (Tex. 2014) .......................................................................... 15, 25

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ................................... 5, 7

*Choice Hotels Int'l, Inc. v. Patel*,
   940 F. Supp. 2d 532 (S.D. Tex. 2013) ............................................................ 18, 20

*Deloach v. Delchamps*,
   897 F.2d 815 (5th Cir.1990) ................................................................................. 11

*Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*,
   530 F.3d 395 (5th Cir. 2008) ................................................................................. 9

*DHI Group, Inc. v. Kent*,
   No. 21-20274, 2022 WL 3755782 (5th Cir. Aug. 30, 2022) ............................ 15, 24

*Diamond Offshore Co. v. A & B Builders, Inc.*,
   302 F.3d 531 (5th Cir. 2002) ................................................................................. 8

*Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308 (5th Cir. 1995).................................................. 7

*Elcor Chem. Corp. v. Agri–Sul, Inc.*,
   494 S.W.2d 204 (Tex. App.–Dallas 1973, *writ ref'd n.r.e.*) ............................................. 14, 24

*First National Bank of Arizona v. Cities Service Company*,
   391 U.S. 253 (1968)....................................................................................................... 8

*Forsyth v. Barr*,
   19 F.3d 1527 (5th Cir. 1994), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127
   (1994)..................................................................................................................... 9

*Forsyth v. Barr*,
   513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994) ................................................. 9

*GlobeRanger Corp. v. Software AG USA, Inc.*,
   836 F.3d 477 (5th Cir. 2016) ........................................................................... 14, 24

*Holiday Inns, Inc. v. Airport Holiday Corp.*,
   493 F.Supp. 1025 (N.D. Tex. 1980) ...................................................................... 20

*Holt Atherton Indus., Inc. v. Heine*,
   832 S.W.2s 80 (Tex. 1992) ................................................................................ 14, 24

*Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*,
   53 S.W.3d 799 (Tex. App.—Austin 2001, *pet. denied*)............................................ 18

*Hughes Tools Co. v. G. W. Murphy Industries, Inc.*,
   491 F.2d 923 (5th Cir. 1973) ........................................................................... 16, 26

*Kipp Flores Architects, LLC v. Pradera SFR, LLC*,
   No. SA-21-CV-00673-XR, 2023 WL 28723 (W.D. Tex. Jan. 2, 2023) ..................... 9

*Lincoln Gen. Ins. Co. v. Reyna*,
   401 F.3d 347 (5th Cir. 2005) ............................................................................... 7

*Little v. Liquid Air Corp.*,
   37 F.3d 1069 (5th Cir. 1994) (*en banc*) ............................................................ 10

*Littlefield v. Forney Indep. Sch. Dist.*,
   268 F.3d 275 (5th Cir. 2001) ............................................................................... 8

*Malacara v. Garber*,
   353 F.3d 393 (5th Cir. 2003) ............................................................................. 11

*Maltina Corp. v. Cawy Bottling Co.*,
   613 F.2d 582 (5th Cir. 1980) ........................................................................ 17, 21

*Marrs & Smith P'ship v. D.K. Boyd Oil & Gas Co.*,
   223 S.W.3d 1 (Tex. App. 2005)................................................................ 16, 17, 26

*Matsushita Electric Industrial Company v. Zenith Radio Corporation*,
   475 U.S. 574 (1986)...................................................................................... 9

*McClain v. I-10 Mac Haik CDJR Ltd.*,
   No. 4:21-CV-3240, 2023 WL 361554 (S.D. Tex. Jan. 23, 2023).................... 5, 6, 7, 9, 10, 11

*Meadowbriar Home for Children, Inc. v. Gunn*,
   81 F.3d 521 (5th Cir. 1996) ........................................................................ 11, 12

*Metallurgical Indus., Inc. v. Fourtek, Inc.*,
   790 F.2d 1195 (5th Cir. 1986) ..................................................................... 15, 25

*Miller v. Lone Star Tavern, Inc.*,
   593 S.W.2d 341 (Tex. App.—Waco 1979, *no writ*) ............................................ 22

*Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*,
   316 U.S. 203, 62 S.Ct. 1022, 86 L.Ed. 1381 (1942) ............................................ 21

*Mission Pharmacal Co. v. Virtus Pharms., LLC*,
    23 F. Supp. 3d 748 (W.D. Tex. 2014) ........................................................................... 18, 19
*Mobil Oil Corp. v. Ellender*,
    968 S.W.2d 917 (Tex. 1998) ..................................................................................... 16, 26
*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545, 134 S. Ct. 1749, 188 L. Ed. 2d 816 (2014) ................................................. 23
*Pebble Beach Co. v. Tour 18 I Ltd.*,
    155 F.3d 526 (5th Cir. 1998) ........................................................................................ 20, 21
*Precision Plating & Metal Finishing Inc. v. Martin Marietta Corp.*,
    435 F.2d 1262 (5th Cir. 1970) ....................................................................................... 14, 24
*Qaddura v. Indo-European Foods, Inc.*,
    141 S.W.3d 882 (Tex. App.—Dallas 2004, *pet. denied*) ......................................... 17, 20, 21
*Quick Techs., Inc. v. Sage Group PLC*,
    313 F.3d 338 (5th Cir. 2002) ......................................................................................... 20, 21
*Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*,
    336 F.3d 410 (5th Cir. 2003) ................................................................................................ 10
*Reed Tool Co. v. Copelin*,
    689 S.W.2d 404 (Tex. 1985) ......................................................................................... 17, 26
*Rolex Watch USA, Inc. v. Meece*,
    158 F.3d 816 (5th Cir. 1998) ................................................................................................ 20
*Romag Fasteners, Inc v. Fossil, Inc.*,
    590 U.S. 212, 140 S. Ct. 1492, 206 L. Ed. 2d 672 (2020) ..................................................... 21
*Scott Fetzer Co. v. House of Vacuums Inc.*,
    381 F.3d 477 (5th Cir.2004) ................................................................................................. 19
*Sossamon v. Lone Star State of Texas*,
    560 F.3d 316 (5th Cir. 2009), *aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277, 131 S.Ct.
    1651, 179 L.Ed.2d 700 (2011) .............................................................................................. 6
*Sossamon v. Texas*,
    563 U.S. 277, 131 S.Ct. 1651, 179 L.Ed.2d 700 (2011) ......................................................... 6
*Southwest Battery Corporation v. Owen*,
    131 Tex. 423, 115 S.W.2d 1097 (Tex. 1938) ........................................................................ 22
*Stokes v. Carcavba, LLC*,
    No. EP-22-CV-00271-ATB, 2024 WL 1023068 (W.D. Tex. Mar. 8, 2024) ........................... 7, 9
*StoneCoat of Texas, LLC v. ProCal Stone Design, LLC*,
    426 F.Supp.3d 311 (E.D. Tex. 2019) .................................................................................... 12
*Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*,
    851 F.3d 440 (5th Cir. 2017) .................................................................................... 18, 19, 22
*Sw. Energy Prod. Co. v. Berry-Helfand*,
    491 S.W.3d 699 (Tex. 2016) ........................................................................ 13, 14, 15, 24, 25
*Taco Cabana Intern., Inc. v. Two Pesos, Inc.*,
    932 F.2d 1113 (5th Cir. 1991), *aff'd sub nom. Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S.
    763, 112 S. Ct. 2753, 120 L. Ed. 2d 615 (1992) ................................................................... 22
*Treece v. Perrier Condo. Owners Ass'n, Inc.*,
    569 F. Supp. 3d 347 (E.D. La. 2021) ................................................................................... 11
*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 U.S. 763, 112 S. Ct. 2753, 120 L. Ed. 2d 615 (1992) ...................................................... 22

v

*Univ. Computing Co. v. Lykes–Youngstown Corp.*,
   504 F.2d 518 (5th Cir. 1974) ..................................................... 13, 14, 15, 16, 24, 25
*Wallace v. Tex. Tech Univ.*,
   80 F.3d 1042 (5th Cir. 1996) ................................................................................. 10
*Wellogix, Inc. v. Accenture, L.L.P.*,
   716 F.3d 867 (5th Cir. 2013) ..................................................................... 13, 16, 17, 26
*Westchester Media v. PRL USA Holdings, Inc.*,
   214 F.3d 658 (5th Cir.2000) ..................................................................................... 18, 19
*Zapata Corp. v. Zapata Trading Int'l, Inc.*,
   841 S.W.2d 45 (Tex. App.—Houston [14th Dist.] 1992, *no writ*) ............................ 19
*Zink v. United States*,
   929 F.2d 1015 (5th Cir.1991) ................................................................................... 11, 12

Statutes

15 UNITED STATES CODE § 1111 .................................................................................. 22
15 UNITED STATES CODE § 1114 .................................................................................. 17
15 UNITED STATES CODE § 1116 ........................................................................... 17, 18, 19
15 UNITED STATES CODE § 1117 ..................................................... 17, 18, 21, 22, 23
18 UNITED STATES CODE § 1836 .................................................................................. 13
28 UNITED STATES CODE § 1920 .................................................................................. 23
TEXAS BUSINESS AND COMMERCE CODE § 16 .............................................................. 18
TEXAS CIVIL PRACTICE AND REMEDIES CODE § 134A .................................................... 13
TEXAS CIVIL PRACTICE AND REMEDIES CODE § 41 ........................................... 16, 22, 26

Rules

FEDERAL RULE OF CIVIL PROCEDURE 52 ....................................................................... 12
FEDERAL RULE OF CIVIL PROCEDURE 54 ....................................................................... 11
FEDERAL RULE OF CIVIL PROCEDURE 56 ............................................................... 5, 6, 7, 10

Treatises

5 J. Thomas McCarthy,
   *McCarthy On Trademarks* (4th ed. 2004).................................................................. 17
Joseph F. Cleveland, Jr. & Herbert J. Hammond, *TUTSA vs. DTSA – Should I Bring My Trade-
   Secret Case in State or Federal Court?*, 2017 TXCLE-AIP 18 II, 2017 WL 8316069 (2017) 12
RESTATEMENT (THIRD) OF UNFAIR COMPETITION (1995) ............................................... 17

## I.    STATEMENT OF THE CASE

1.      On September 8, 2022, Well Cell Global LLC (**"WCG"**) filed this action against Defendants Shawn Paul Calvit (**"Calvit"**), Marc Pierre Desgraves IV (**"Desgraves"**), Charles Alexander Elliott (**"Elliott"**), Insulinic of Lafayette LLC (**"Insulinic of LA"**), Insulinic of Hialeah LLC (**"Insulinic of FL"**), and Insulinic of Hawaii LLC (**"Insulinic of HI"**) (collectively, the **"Original Defendants"**).[1] *See* ECF Nos. 1, 219.

2.      On March 1, 2024, Plaintiffs filed their Third Amended Complaint (**"TAC"**) against Defendants, including, *inter alia*, claims of trademark infringement, trade secret misappropriation, and unfair competition against Defendants. *See* ECF Nos. 175, 219.

3.      On October 25, 2024, Plaintiffs filed a Fourth Amended Complaint. *See* ECF Nos. 210, 219.

4.      On November 21, 2024, Plaintiffs entered into a stipulated consent judgment with Defendants Shawn Paul Calvit, Patrick Dale Leleux, MD, Insulinic LLC, Insulinic of Lafayette LLC, Insulinic of Hialeah LLC, Insulinic of Gretna, LLC, Insulinic of Hammond, LLC, and Integral Medicine Group, Inc. (collectively, the **"Settling Defendants"**), which this Court entered and signed the following day. *See* ECF Nos. 212, 213, 219.

5.      On December 17, 2024, Plaintiffs filed a Notice of Voluntary Dismissal of Defendant DMC, for which this Court entered an Order of dismissal the following day. *See* ECF Nos. 217, 218, 219.

6.      Thus, the Defendants currently remaining in this litigation are Defendants Desgraves,

---

[1] In order to avoid repeating facts of which this Court is already aware, Plaintiffs would incorporate by reference the facts stated in Plaintiffs' previously filed motion for summary judgment, including the Statement of the Case section therein, including those defined terms in parenthetical citations. *See* ECF No. 219.

Elliott, and Insulinic HI (collectively, "**Remaining Defendants**") – none of which have filed an Answer and only minimally participated early on before their counsel withdrew. *See* ECF Nos. 210, 219.

7.      Despite the fact that this litigation has been pending for over two years, none of the Remaining Defendants, who have been properly served, have ever filed an Answer in this case. *See* Exhibit 1 at 2, ¶ 6; ECF No. 219. The Remaining Defendants participated in some initial early filings through attorneys Justin Ratley and Oliver Huff, who subsequently withdrew their representation of the Remaining Defendants on or about June 20, 2023. *Id*. Since that time, the Remaining Defendants have proceeded *pro se* and have not participated in this case, including failing to file a status report as ordered by this Court. *Id*.; *see* ECF No. 213.

8.      On January 14, 2025, Plaintiffs filed a motion for summary judgment on their claims for trade secret misappropriation, trademark infringement, and unfair competition against the Remaining Defendants, to which no response was filed. *See* ECF No. 219.

9.      On April 14, 2025, this Court entered its Memorandum and Opinion granting Plaintiffs' motion and an amended version on April 18, 2025. *See* ECF Nos. 220, 222. On April 16, 2025, this Court entered its Order granting same and ordering Plaintiffs to file a proposed Final Judgment by April 30, 2025. *See* ECF No. 221.

10.     Pursuant to this Honorable Court's Order, and in view of the sole remaining issues as to the appropriate remedies and damages to be awarded to Plaintiffs, Plaintiffs file the instant Motion to resolve these issues and request this Honorable Court enter Final Judgment disposing of all remaining issues in this matter.

## II.  SUMMARY OF THE ARGUMENT

11.     In addition to what has been set forth in Plaintiffs' previously filed and granted motion for summary judgment (*see* ECF Nos. 219-222), the undisputed evidence in the summary judgement

record establishes the following facts:

a. Plaintiffs' Trademarks are infringed, and continue to be infringed by certain of the Remaining Defendants, including by their improper use of them, despite Plaintiffs revoking the Remaining Defendants' authorization of use.

b. The Remaining Defendants used, and continue to use, Plaintiffs' Trade Secrets without authority.

c. Plaintiffs have suffered lost profits as a result of the misappropriation of their Trade Secrets by the Remaining Defendants, wherein Plaintiffs would have gained said profits but for said misappropriation in the competing businesses of the Remaining Defendants.

d. The misappropriation of Plaintiffs' Trade Secrets by Remaining Defendants was willful and malicious, and, thus, Plaintiffs are entitled to an award of exemplary damages in an amount equal to twice the award of any other monetary damages pursuant to 18 U.S.C. § 1836(b)(3)(C) and reasonable attorney's fees in this action pursuant to 18 U.S.C. § 1836(b)(3)(D).

e. Plaintiffs have suffered lost profits as a result of the infringement of Plaintiffs' Trademarks by the Remaining Defendants, wherein Plaintiffs would have gained said profits but for said infringement in the competing businesses of the Remaining Defendants.

f. The nature of the relationship between Plaintiffs and the Remaining Defendants and the fact that Plaintiffs and the Remaining Defendants are direct competitors, the lost profits of Plaintiffs are directly measurable, in part, by the profits gained by the Remaining Defendants.

g.  The Remaining Defendants have diverted numerous patients and potential patients from Plaintiffs by their unauthorized use of Plaintiffs' Trademarks.

h.  The Remaining Defendants used, and continue to use, Plaintiffs' Trademarks without authority.

i.  Plaintiffs possess a high reputation and goodwill in their field, including as a result of the technologies they developed. This reputation and goodwill is highly important to Plaintiffs, including because they are a market leader and have been required to, and continue to be required to, put forth efforts to counteract the infringement and misrepresentations of the Remaining Defendants.

j.  Plaintiffs have suffered loss of business, including loss of additional past and future licensees and patients, as a result of the Remaining Defendants' unauthorized use of Plaintiffs' Trademarks.

k.  The misappropriation of Plaintiffs' Trademarks by Remaining Defendants was, and continues to be, willful and malicious, and, thus, Plaintiffs are entitled to an award of exemplary damages in an amount equal to twice the award of any other monetary damages pursuant to TEX. CIV. PRAC. & REM. CODE § 134A.004 and reasonable attorney's fees in this action pursuant to TEX. CIV. PRAC. & REM. CODE § 134A.005.

l.  The Remaining Defendants' use of Plaintiffs' Trademarks in connection with the competing businesses of the Remaining Defendants was, and continues to be, done with deliberate, intentional, willful, and malicious intent of the Remaining Defendants.

m.  There was, and continues to be, actual confusion by consumers due to the infringing

use of Plaintiffs' Trademarks by the Remaining Defendants, resulting in the diversion of sales from Plaintiffs to the Remaining Defendants.

n. As a result of the acts of the Remaining Defendants in both pre-suit infringement and post-suit infringement, this case is exceptional and stands out from other similarly situated cases in view of the totality of the circumstances.

12. Due to the foregoing, Plaintiffs bring this Motion, moving for this Honorable Court to grant the following awards against the Remaining Defendants for Plaintiffs' actions for trade secret misappropriation under DUTSA and TUTSA; trademark infringement under Lanham Act and Texas Common Law; and unfair competition under Lanham Act and Texas Common Law (as set forth in attached Exhibit A):

a. a permanent injunction;

b. an award of lost profits;

c. an award of a reasonable royalty;

d. an award of exemplary damages;

e. an award of reasonable attorneys' fees;

f. an award of Plaintiffs' costs and expenses;

g. an award of pre-judgment interest; and

h. an award of post-judgment interest.

### III. STANDARD OF REVIEW

13. "FEDERAL RULE OF CIVIL PROCEDURE 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *McClain v. I-10 Mac Haik CDJR Ltd.*, No. 4:21-CV-3240, 2023 WL 361554, *3 (S.D. Tex. Jan. 23, 2023) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106

S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Summary judgment is proper when the pleadings, the discovery (including depositions, answers to interrogatories, and admissions) and disclosure materials on file, and affidavits, if any, "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a), (c)(1); *McClain*, 2023 WL 361554 at *3. A fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Bazan ex rel. Bazan v. Hidalgo County*,

246 F.3d 481, 489 (5th Cir. 2001) ("An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham."). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009), *aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277, 131 S.Ct. 1651, 179 L.Ed.2d 700 (2011) (citation omitted).

14.    "[T]he initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an absence of a genuine issue of material fact." *McClain*, 2023 WL 361554 at *3 (*citing Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005)). "The movant, however, need not negate the elements of the non-movant's case." *McClain*, 2023 WL 361554 at *3 (*citing Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). "The movant may meet its burden by pointing out the absence of evidence supporting the non-movant's case." *McClain*, 2023 WL 361554 at *3 (*citing Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995)). Thus, "[t]he moving party bears the initial burden of establishing that no genuine fact dispute exists, either by pointing to evidence so establishing, or by pointing

out a lack of evidence to support the nonmovant's case." *Stokes v. Carcavba, LLC*, No. EP-22-CV-00271-ATB, 2024 WL 1023068, *2 (W.D. Tex. Mar. 8, 2024) (*citing* FED. R. CIV. P. 56(c)(1)(A)–(B); *Celotex*, 477 U.S. at 324–325).

15.    Once the movant meets this burden, the burden then shifts to the nonmovant to go beyond mere reliance on the allegations or denials in the non-movant's pleadings and designate specific facts which show that a genuine fact dispute exists, including by identifying specific evidence in the record and explaining how the evidence is sufficient to support the resolution of the material factual issues in his favor. *Anderson*, 477 U.S. at 248–250 (*citing First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288–289 (1968)); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Axxiom Mfg., Inc. v. McCoy Invs., Inc.*, 846 F. Supp. 2d 732, 742 (S.D. Tex. 2012) (*citing Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007)); *Diamond Offshore Co. v. A & B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts" by proffering improbable assertions, hearsay, conclusory allegations, unsubstantiated assertions, or unsupported speculation, which are not competent summary judgment evidence, or by only a scintilla of evidence. *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986); *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008); *Am. Trigger Pullers LLC v. Wylde*, No. CV H-19-2694, 2020 WL 1809724, *2 (S.D. Tex. Apr. 9, 2020) (internal citations omitted); *Stokes*, 2024 WL 1023068 at *2 (*citing Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994)); *Kipp Flores Architects, LLC v. Pradera SFR, LLC*, No. SA-21-CV-00673-XR, 2023 WL 28723, *3 (W.D. Tex. Jan. 2, 2023). "Instead, the non-movant must present specific facts which show the existence of a

genuine issue concerning every essential component of its case." *McClain*, 2023 WL 361554 at *3 (*citing Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003)).

16.     When evaluating a motion for summary judgment, the court must view the evidence presented in the record in the light most favorable to the nonmoving party and make all reasonable inferences from such evidence in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1048 (5th Cir. 1996); *see McClain*, 2023 WL 361554 at *3 (*citing Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003); *quoting Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004)). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). But, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may…consider the fact undisputed for purposes of the motion." *Wylde*, 2020 WL 1809724 at *2 (*quoting* FED. R. CIV. P. 56(e)(2)). The court may not make credibility determinations or weigh the evidence in making its ruling, nor does Rule 56 "impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment; evidence not referred to in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary judgment record." *McClain*, 2023 WL 361554 at *4 (*citing Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003)).

17.     Rule 54(b) allows the court to direct entry of a final judgment as to one or more, but fewer than all, claims or parties if the court expressly determines that the judgment will be the ultimate disposition upon a cognizable claim for relief and there is no just reason for delay. FED. R. CIV. P. 54; *see Treece v. Perrier Condo. Owners Ass'n, Inc.*, 569 F. Supp. 3d 347, 362 (E.D. La. 2021).

This determination is made by weighing the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other. *Treece*, 569 F.Supp.3d at 362. Where disposition has been made on less than all claims and parties, and Rule 54(b) is not evoked, final judgment cannot be entered – "'[a] judgment is final when it terminates litigation on the merits and leaves the court with nothing to do except execute the judgment.'" *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 528 (5th Cir. 1996) (*quoting Zink v. United States*, 929 F.2d 1015, 1020 (5th Cir.1991)). Indeed, "a judgment is not final until ***both*** liability and damages are determined." *Gunn*, 81 F.3d at 528 (*citing Deloach v. Delchamps*, 897 F.2d 815 (5th Cir.1990)). While no specific rule, statute, or form of words or acts evince a judgment, "'a final judgment for money, must, at least, determine, or specify the means for determining, the amount of the judgment.'" *Gunn*, 81 F.3d at 528 (*quoting Zlink*, 929 F.2d at 1020 (internal citations omitted)); *see Farbwerke Hoeschst A.G. v. M/V "Don Nicky"*, 589 F.2d 795, 798–799 (5th Cir. 1979) (*citing* Fed. R. Civ. P. 52(a)) (vacating final judgment entered where issue of damages was not fully or properly disposed).

### IV. ARGUMENTS AND AUTHORITIES

### A.    <u>Legal Principles</u>

#### i.    *Remedies for Trade Secret Misappropriation*

18.    The remedies available under the Defend Trade Secrets Act ("**DTSA**") are similar to those under the Texas Uniform Trade Secrets Act ("**TUTSA**"), as both the DTSA and TUTSA are "based on the [Uniform Trade Secrets Act ("**UTSA**")]." *StoneCoat of Texas, LLC v. ProCal Stone Design, LLC*, 426 F. Supp. 3d 311, 332–333 (E.D. Tex. 2019) (*citing* Joseph F. Cleveland, Jr. & Herbert J. Hammond, *TUTSA vs. DTSA – Should I Bring My Trade-Secret Case in State or Federal Court?*, 2017 TXCLE-AIP 18 II, 2017 WL 8316069 (2017)). Under both the DTSA and TUTSA, a plaintiff may be awarded one or more of an injunction against actual or threatened misappropriation, an

award of damages for actual loss caused by the misappropriation, an award for any unjust enrichment beyond losses covered by any actual damages, an award of a reasonable royalty in lieu of other methods, an award of exemplary damages up to twice the damages awarded if the misappropriation was willful and malicious, an award of reasonable attorneys' fees if the misappropriation was willful and malicious. *See* 18 U.S.C. § 1836(b)(3); TEX. CIV. PRAC. & REM. CODE §§ 134A.003-134A.005; *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 879 (5th Cir. 2013) (*quoting Bohnsack v. Varco, L.P.*, 668 F.3d 262, 280 (5th Cir. 2012) (internal citations omitted)) ("'Damages in misappropriation cases can take several forms: the value of plaintiff's lost profits; the defendant's actual profits from the use of the secret, the value that a reasonably prudent investor would have paid for the trade secret; the development costs the defendant avoided incurring through misappropriation; and a "reasonable royalty."'"). Thus, "[a] 'flexible and imaginative' approach is applied to the calculation of damages in misappropriation-of-trade-secrets cases." *Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 710 (Tex. 2016) (*quoting Univ. Computing Co. v. Lykes–Youngstown Corp.*, 504 F.2d 518, 538 (5th Cir. 1974).

19.     For actual damages, the loss of value to plaintiff is usually measured by lost profits, which a party must prove by introducing "'objective facts, figures, or data from which the amount of lost profits can be ascertained'" with reasonable certainty. *Sw. Energy*, 491 S.W.3d at 711 (*quoting Holt Atherton Indus., Inc. v. Heine*, 832 S.W.2s 80, 84 (Tex. 1992). Value gained by the defendant "may be measured by the defendant's actual profits resulting from the use or disclosure of the trade secret (unjust enrichment), the value a reasonably prudent investor would have paid for the trade secret, or development costs that were saved." *Sw. Energy*, 491 S.W.3d at 711 (*citing Univ. Computing*, 504 F.2d at 536, 538–539; *Precision Plating & Metal Finishing Inc. v. Martin Marietta Corp.*, 435 F.2d 1262, 1263–1264 (5th Cir. 1970); *Elcor Chem. Corp. v. Agri–Sul, Inc.*,

494 S.W.2d 204, 214 (Tex. App.–Dallas 1973, *writ ref'd n.r.e.*)); *GlobeRanger Corp. v. Software AG USA, Inc.*, 836 F.3d 477, 499 (5th Cir. 2016). The value to defendant "'is usually the accepted approach where the secret has not been destroyed and where the plaintiff is unable to prove specific injury.'" *DHI Group, Inc. v. Kent*, No. 21-20274, 2022 WL 3755782, *5 (5th Cir. Aug. 30, 2022) (*quoting Univ. Computing*, 504 F.2d at 536). Further, both lost profits and unjust enrichment damages may be awarded together as compensatory damages for trade secret misappropriation. *See Sw. Energy*, 491 S.W.3d at 711, n.7.

20.     Where the plaintiff cannot prove specific injury, a reasonable royalty may be awarded "based on a fictional negotiation of what a willing licensor and licensee would have settled on as the value of the trade secret at the beginning of the infringement." *Sw. Energy*, 491 S.W.3d at 711 (*citing Metallurgical Indus., Inc. v. Fourtek, Inc.*, 790 F.2d 1195, 1208 (5th Cir. 1986); *Univ. Computing*, 504 F.2d at 536–539). However, in no event may a damages award be based on sheer speculation. *Sw. Energy*, 491 S.W.3d at 711 (*citing Meallurgical Indus.*, 790 F.2d at 1208; *Burbage v. Burbage*, 447 S.W.3d 249, 260 (Tex. 2014)). In determining a reasonable royalty, a court may consider the following factors: "[a] the resulting and foreseeable changes in the parties' competitive posture; [b]] the prices past purchasers or licensees may have paid; [c]] the total value of the secret to the plaintiff, including the plaintiff's development costs and the importance of the secret to the plaintiff's business; [d]] the nature and extent of the use the defendant intended for the secret; [and e]] other unique factors that might have affected the parties' agreement, such as the ready availability of alternative[s]." *Univ. Computing*, 504 F.2d at 538 (*citing Hughes Tools Co. v. G. W. Murphy Industries, Inc.*, 491 F.2d 923, 931 (5th Cir. 1973)).

21.     Exemplary damages and attorneys' fees may also be awarded upon a showing, by clear and convincing evidence, that the harm to plaintiff resulted from malice. *Wellogix*, 716 F.3d at 883

(*quoting Bennett v. Reynolds*, 315 S.W.3d 867, 871 (Tex. 2010); *citing* TEX. CIV. PRAC. & REM. CODE § 41.003(a)(2)).

22.     Malice is proven by direct or circumstantial evidence of "'a specific intent by the defendant to cause substantial injury [or harm] to the claimant.'" *Wellogix*, 716 F.3d at 883-884 (*quoting Bennett*, 315 S.W.3d at 872 (*quoting* TEX. CIV. PRAC. & REM. CODE § 41.001(7); *Marrs & Smith P'ship v. D.K. Boyd Oil & Gas Co.*, 223 S.W.3d 1, 22 (Tex. App. 2005) (*citing Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998))). "[S]pecific intent," in turn, exists if "the actor desires to cause the consequences of his act, or he believes the consequences are substantially certain to result from it." *Wellogix*, 716 F.3d at 883 (*quoting Marrs & Smith*, 223 S.W.3d at 22 (*citing Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 406 (Tex. 1985))).

### ii.     *Remedies for Trademark Infringement and Unfair Competition*

23.     The remedies provided by the Lanham Act for violations thereof include one or more of an injunction against actual or threatened violations, an award of damages for actual loss caused by the violations, an award for disgorgement of the defendant's profits from the violations, an award of a reasonable royalty, an award of exemplary damages up to thrice the damages awarded if the violation was willful and malicious, an award of reasonable attorneys' fees if the violation was willful and malicious. *See* 15 U.S.C. §§ 1114, 1116, & 1117; *Qaddura v. Indo-European Foods, Inc.*, 141 S.W.3d 882, 889 (Tex. App.—Dallas 2004, *pet. denied*) (*citing Maltina Corp. v. Cawy Bottling Co.*, 613 F.2d 582, 585 (5th Cir. 1980); RESTATEMENT (THIRD) OF UNFAIR COMPETITION §§ 36, 37 cmt. b (1995); 5 J. Thomas McCarthy, *McCarthy On Trademarks* §§ 30:59, 30:64 (4th ed. 2004)); *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 459 (5th Cir. 2017) (*quoting* 15 U.S.C. § 1117(a); *citing* 15 U.S.C. § 1116) ("The Lanham Act provides remedies in the form of both injunctive relief and…allows for recovery of monetary damages, 'subject to the principles of equity,' in the form of '(1) defendant's profits, (2) any damages sustained by the

plaintiff, and (3) the costs of the action.'"); TEX. BUS. & COM. CODE § 16.102. Further, "[u]nfair competition claims under the Lanham Act are governed by the same standard as those for trademark infringement." *Mission Pharmacal Co. v. Virtus Pharms., LLC*, 23 F. Supp. 3d 748, 759 (W.D. Tex. 2014) (*citing Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 663 (5th Cir.2000)). "A trademark infringement and unfair competition action under Texas common law presents essentially 'no difference in issues than those under federal trademark infringement actions.'" *Choice Hotels Int'l, Inc. v. Patel*, 940 F. Supp. 2d 532, 538–539 (S.D. Tex. 2013) (*quoting Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 806 n. 3 (Tex. App.—Austin 2001, *pet. denied*) (*quoting Zapata Corp. v. Zapata Trading Int'l, Inc.*, 841 S.W.2d 45, 47 (Tex. App.—Houston [14th Dist.] 1992, *no writ*))); *Mission Pharmacal*, 23 F. Supp. 3d at 759 (*citing Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 483-484 (5th Cir.2004); *Westchester*, 214 F.3d at 663–664 n. 1; *quoting Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 236 n. 7 (5th Cir. 2010).

24.     For injunctive relief, once a plaintiff has succeeded on the merits of its claim, the Lanham Act provides a presumption of irreparable harm. *See* 15 U.S.C. § 1116(a).

25.     For actual damages, a plaintiff may be awarded its lost profits or a reasonable royalty. *See Streamline*, 851 F.3d at 459-460. A royalty is generally awarded only in those cases where the infringement was a result of use beyond what was already agreed upon between the parties. *Id*. Any such royalty award must also "be rationally related to the scope of the defendant's infringement." *Id*. at 461 (*citing Boston Prof'l Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*, 597 F.2d 71, 75-76 (5th Cir. 1979); *Bandag, Inc. v. Al Bolser's Tire Stores*, 750 F.2d 903, 917 (Fed. Cir. 1984); *Choice Hotels*, 940 F.Supp.2d at 546 (Costa, J.); *Holiday Inns, Inc. v. Airport Holiday Corp.*, 493 F.Supp. 1025, 1028 (N.D. Tex. 1980)).

26.    For profit damages, a plaintiff may be awarded a disgorgement of defendant's profits as either a replacement for the profits lost by plaintiff or as an equitable remedy to prevent defendant's unjust enrichment. *See Qaddura*, 141 S.W.3d at 890. In determining whether profits is a proper remedy, "[t]he factors to be considered include, but are not limited to '(1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off.'" *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 349 (5th Cir. 2002) (*quoting Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 554 (5th Cir. 1998); *citing Rolex Watch USA, Inc. v. Meece*, 158 F.3d 816, 823 (5th Cir. 1998)). However, while willfulness is a consideration, such a showing is not a prerequisite for an award of profits. *Quick Techs.*, 313 F.3d at 349; *Romag Fasteners, Inc v. Fossil, Inc.*, 590 U.S. 212, 219, 140 S. Ct. 1492, 1497, 206 L. Ed. 2d 672 (2020). Nor is a showing of actual confusion a prerequisite for a damage award. *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 490 (5th Cir. 2008).

27.    Where profits are appropriate, a plaintiff is only entitled to those attributable to the violations of the Lanham Act. *See id*. (*citing Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206, 62 S.Ct. 1022, 86 L.Ed. 1381 (1942); *Pebble Beach*, 155 F.3d at 554–555). "[P]laintiff need only show the defendant's gross sales; the burden then falls to the defendant to 'prove all elements of cost or deduction claimed.'" *Qaddura*, 141 S.W.3d at 890 (*quoting* 15 U.S.C. § 1117(a); *Maltina Corp.*, 613 F.2d at 586). "'It is not necessary that profits should be susceptible of exact calculation, it is sufficient that there be data from which they may be ascertained with a reasonable degree of certainty and exactness.'" *Miller v. Lone Star Tavern, Inc.*, 593 S.W.2d 341, 346 (Tex. App.—Waco 1979, *no writ*) (*quoting Southwest Battery Corporation*

*v. Owen*, 131 Tex. 423, 115 S.W.2d 1097, 1098 (Tex. 1938)). In the case of either profits or actual damages awards, a plaintiff may be barred from such damages for failure to give notice of a mark's registration, unless the defendant had actual notice thereof. 15 U.S.C. § 1111.

28.    For an award of exemplary damages, this is governed by Texas law, where "exemplary damages may be awarded only if damages other than nominal damages are awarded." *Streamline*, 851 F.3d at 463 (*quoting* TEX. CIV. PRAC. & REM. CODE § 41.004(a); *citing* 15 U.S.C. § 1117(a) (instructing that damages under the Lanham Act serve as "compensation and not a penalty")). Under the Lanham Act, "[a]n enhancement of damages may be based on a finding of willful infringement, but cannot be punitive." *Taco Cabana Intern., Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1127 (5th Cir. 1991), *aff'd sub nom. Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 112 S. Ct. 2753, 120 L. Ed. 2d 615 (1992).

29.    The Lanham Act further provides for an award of attorneys' fees in "exceptional cases." *See* 15 U.S.C. § 1117(a). An exceptional case for trademark infringement is the same as for patent infringement – a case which "'stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.'" *Baker v. DeShong*, 821 F.3d 620, 623 (5th Cir. 2016) (*quoting Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554, 134 S. Ct. 1749, 1756-1758, 188 L. Ed. 2d 816 (2014)). This determination requires only a showing by a preponderance of the evidence. *Id*. Likewise, the Lanham Act permits the court to award costs to the prevailing party, regardless of whether the case is found exceptional. *See* 15 U.S.C. § 1117(a); 28 U.S.C. § 1920.

## B. Plaintiffs Are Entitled To Damages For The Remaining Defendants' Trade Secret Misappropriation

### i. Plaintiffs are entitled to actual damages.

30.    As a result of the Remaining Defendants' misappropriation of Plaintiffs' Trade Secrets, Plaintiffs suffered damages in the form of lost profits. Moreover, the Remaining Defendants unjustly profited from their misappropriation.

31.    Plaintiffs lost $1,075,645.51 in profit as a result of the Remaining Defendants' misappropriation of Plaintiffs' Trade Secrets. Ex. 1 at 4, ¶ 13. This amount represents an extrapolation of the per infusion payments Plaintiffs would have received from the Remaining Defendants based on the information provided by the press releases of the Remaining Defendants. *Id*.; *see* Exhibit C. This amount further represents a pro rata basis of the total lost profits of $2,232,235.67, as attributed specifically to the Trade Secrets. Ex. 1 at 4, ¶ 14. These lost profits have occurred as a direct result of the Remaining Defendants' misappropriation, including because, but for, said misappropriation, Plaintiffs would have been the sole entity to perform the types of services in the Remaining Defendants' service area, and, thus, if any infusions were performed by anyone other than Plaintiffs, these infusions would necessarily be performed by someone under license from Plaintiffs. *Id*. at 4-5, ¶ 14. In other words, Plaintiffs would have profited from either the Remaining Defendants or another entity but for the Remaining Defendants' misappropriation. *Id*. at 5, ¶ 14.

32.    The Remaining Defendants unjustly profited in an amount of $3,468,761.96 from their misappropriation of Plaintiffs' Trade Secrets. *Id*. at 5, ¶ 15. This amount represents the amount the Remaining Defendants made as profit from their misappropriation of Plaintiffs' Trade Secrets by subtracting the hard costs of each infusion from the Remaining Defendants' total profit per infusion. *Id*. at 5, ¶¶ 15-16. This results in the total profit the Remaining Defendants made without

making the required payments as a proper licensee of Plaintiffs. *Id*. at 5, ¶ 16. Again, taking half of this amount as representative of the Trade Secrets pro rata amount and subtracting the amounts attributable to Plaintiffs' lost profits results in the final amount of the Remaining Defendants' unjust profits. *Id*. at 5, ¶ 16.

33. Additionally, the average value a reasonably prudent investor would have paid for Plaintiffs' Trade Secrets and the amount the Remaining Defendants saved in development costs by misappropriating Plaintiffs' Trade Secrets rather than engage in their own development of Plaintiffs' technologies would have been at least $3,000,000.00, when adjusted for the pro rata portion attributable to the Trade Secrets. *Id*. at 5, ¶ 17.

34. Further, the Remaining Defendants are direct competitors with Plaintiffs, including as evidence by the simple fact that the Trade Secrets given to the Remaining Defendants were disclosed as part of the Remaining Defendants seeking to license and use Plaintiffs' technologies. *Id*. at 6, ¶ 18. Moreover, the Remaining Defendants' own advertising and public disclosures show that the type of work done in connection with their misappropriation is the same type of work done by Plaintiffs. *Id*.

35. Thus, (a) Plaintiffs have suffered lost profits as a result of the misappropriation of their Trade Secrets by the Remaining Defendants, wherein Plaintiffs would have gained said profits but for said misappropriation in the competing businesses of the Remaining Defendants, and (b) the Remaining Defendants have unjustly profited from their misappropriation of Plaintiffs' Trade Secrets which should be disgorged in favor of Plaintiffs.

### ii. *Plaintiffs are entitled to a reasonable royalty.*

36. Although Plaintiffs have suffered the specific injuries stated above, to the extent this Honorable Court holds otherwise, Plaintiffs should be awarded a reasonable royalty for the Remaining Defendants' misappropriation.

37.     Here, based on the parties to the hypothetical negotiation, and the totality of the circumstances, a reasonable royalty rate is $35.66 per infusion for the pro rata portion attributable to the Trade Secrets. *Id*. at 6, ¶ 19. At all times during the Remaining Defendants' misappropriation, Plaintiffs have charged all of those to which Plaintiffs have licensed the Trade Secrets this amount. *Id*. at 6, ¶ 20. Further, the value of the Trade Secrets to Plaintiffs is high, as Plaintiffs expended several years in developing them and the Trade Secrets are highly important to Plaintiffs' business. *Id*.; *see also id*. at 2-3, ¶¶ 7-9. At the same time, the use by the Remaining Defendants was entirely the basis of the creation of their practice, and, thus, a royalty rate would be applicable to the entirety of the patients receiving the infusion treatments from the Remaining Defendants. Id. at 6, ¶ 20; see also id. at 3-4, ¶¶ 9-11.

38.     Thus, Plaintiffs are entitled to an award of a reasonable royalty of $1,075,645.51 based on the specific facts of this case. *Id*. at 6, ¶ 21.

### iii.     *Plaintiffs are entitled to exemplary damages.*

39.     There is no dispute in this case that the actions of the Remaining Defendants in misappropriating Plaintiffs' Trade Secrets were performed willfully and with malice. Indeed, despite express statements by Plaintiffs, including a revocation of licenses of the Remaining Defendants, the Remaining Defendants continued to use, and continue to use, Plaintiffs' Trade Secrets without such authority. *Id*. at 6, ¶ 22; *see* Exhibits A & B. The Remaining Defendants are fully aware that their use of Plaintiffs' Trade Secrets was without Plaintiffs' authorization and continued in spite of this, entirely ignoring Plaintiffs' attempts to negotiate their cessation. Ex. 1 at 6-7, ¶ 22. The Remaining Defendants have continued their unauthorized use with the knowledge that such use diverted potential patients from Plaintiffs and other of Plaintiffs' licensees, directly interfering with Plaintiffs' profits and abilities to conduct business. *Id*. at 7, ¶ 22. The Remaining Defendants specifically acted with such knowledge, in casual disregard of the known harm to

Plaintiffs. *Id*.

40.     Thus, Plaintiffs are entitled to exemplary damages to be determined by this Court up to twice the actual damages or reasonable royalty awarded by this Court.

## C.     Plaintiffs Are Entitled To Damages For The Remaining Defendants' Trademark Infringement And Unfair Competition

### i.     *The Remaining Defendants acted willfully.*

41.     For the same reasons set forth for their actions relating to their misappropriation of Plaintiffs' Trade Secrets, the Remaining Defendants likewise acted with knowledge of their violations of the Lanham Act and the harm to Plaintiffs therefrom. *Id*. at 7, ¶ 23. Thus, the Remaining Defendants' actions in violation of the Lanham Act, namely trademark infringement and unfair competition, were willful and malicious. *Id*.

### ii.     *This case is exceptional.*

42.     Under a totality of the circumstances, this case stands out from others with respect to the lack of substantive strength of the Remaining Defendants' position (considering both the governing law and the facts of the case) and the unreasonable manner in which the Remaining Defendants acted in this litigation. Indeed, the wholehearted disregard of this litigation by the Remaining Defendants, despite having acted in some fashion early on, evidences an unreasonable course of conduct by the Remaining Defendants. *See id*. at 2, ¶ 6. This is conduct that is rare for any case, especially a case such as this, where the parties were already in contact and the Remaining Defendants simply stopped responding and engaging in the litigation. *See* Exhibit 2.

### iii.     *Plaintiffs are entitled to actual damages and profit damages.*

43.     For the same reasons set forth for the Remaining Defendants' actions relating to their misappropriation of Plaintiffs' Trade Secrets, Plaintiffs are entitled to the same lost profits, reasonable royalty, and disgorgement damages. Ex. 1 at 7, ¶ 24.

44.     Plaintiffs possess a high reputation and goodwill in their field, including as a result of the technologies they developed. *Id*. at 2-3, ¶¶ 7-11 & 7, ¶ 25. This reputation and goodwill is highly important to Plaintiffs, including because they are a market leader and have been required to, and continue to be required to, put forth efforts to counteract the infringement and misrepresentations of the Remaining Defendants. *Id*. Plaintiffs have suffered loss of business, including loss of additional past and future licensees and patients, as a result of the Remaining Defendants' unauthorized use of Plaintiffs' Trademarks. *Id*.

**D.     Plaintiffs are entitled to attorneys' fees, costs, and interest.**

45.     "When reviewing the reasonableness of an award of attorney's fees, we should consider: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered." *Qaddura*, 141 S.W.3d at 893 (*citing Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)).

46.     Plaintiffs are entitled to their reasonable attorneys' fees in the amount of $683,330.98, for all work done by their counsel related to the Remaining Defendants. *See* Ex. 1 at 7-8, ¶ 26; Exhibit 3 at 3-4, ¶ 7. This amount represents a reasonable rate for the work performed in this case considering the facts and claims involved, the intricacy of the case, the experience and reputation of the attorneys involved, and the hourly nature of the fees. Counsel for Plaintiffs charged at a rate

of ____ per hour and worked a total of ____ hours on matters relating to the Remaining Defendants.

47.    Plaintiffs are entitled to their costs in the amount of $120.00, for all work done by their counsel related to the Remaining Defendants. Ex. 3 at 3-4, ¶ 7.

48.    Plaintiffs are entitled to pre-judgment interest at a rate of 7.50% for a total amount of $997,673.79, calculated by compounding daily from September 7, 2022 when Plaintiffs sent notice to at least one of the members of Defendants Insulinic HI until judgment. Exhibits A & B. Plaintiffs are entitled to post-judgment interest pursuant to 28 U.S.C. § 1961 at the rate of 3.97% per annum from the date of judgment until the Remaining Defendants make payment on the judgment.

**E.    Plaintiffs are entitled to injunctive relief.**

49.    Here, Plaintiffs have succeeded on the merits of their claims and, thus, are entitled to a rebuttable presumption of immediate harm. Further, both the balance of harms between the parties and the balance of public interests support injunctive relief.

50.    As a result of the Remaining Defendants' improper actions, the Remaining Defendants, and their respective officers, directors, agents, parents, subsidiaries, affiliates, successors, assigns, and each of them, and upon those persons in active conceit or participation with them, who receive actual notice of this Court's Final Judgment and Permanent Injunction by personal service or otherwise, must be immediately and permanently enjoined and restrained from doing any of the following without written authorization from Plaintiffs:

      a.    Using any of the knowledge, information, training, or materials taught, delivered, described, or otherwise imparted from Plaintiffs, in whole or in part, as part of any medical procedure, treatment, therapeutic modality, or otherwise;

      b.    Practicing Plaintiffs' propriety method of insulin resensitization, the microburst insulin infusion modality, or any other form of exogenous intravenous insulin

infusion designed to treat diabetes or other metabolic disorders;

    c.   Disclosing Plaintiffs' Trade Secrets, including their confidential business contacts and their specialized medical training, including their training modules, videos, and handbooks, and methods of conducting their business for Plaintiffs' proprietary method of insulin resensitization for the treatment of diabetes to any person or entity in the United States;

    d.   Representing, by any means whatsoever, that any products manufactured, distributed, advertised, offered or sold by the Remaining Defendants are Plaintiffs' products or vice versa, and from otherwise acting in a way likely to cause confusion, mistake, or deception on the part of purchasers or consumers as to the origin or sponsorship of such products;

    e.   Using Plaintiffs' Trademarks or any confusingly similar derivative thereof, in any form, in connection with the promotion of goods and/or services or as a tradename, service mark, or logo in any such manner that is likely to cause consumer confusion, in a manner disparaging to Plaintiffs, or in a manner that would otherwise unfairly compete with Plaintiffs' trade or business; and

    f.   Using any internet domain or other social media address that includes any of Plaintiffs' Trademarks or any confusingly similar derivation. Promptly, and in compliance with the injunction, the Remaining Defendants shall cooperate with Plaintiffs to transfer any such domain name to Plaintiffs' control, and shall terminate the use of any other similar domains it holds as well as any other social media address making use of Plaintiffs' Trademarks or any derivation thereof.

## V.   ENTRY OF JUDGMENT

51.     Following this Court's determinations on the amount of damages to be awarded to

Plaintiffs, all issues between all remaining parties in this matter shall be resolved and this matter will be ripe for final judgment.

52.     Thus, Plaintiffs respectfully request this Honorable Court further enter the attached Final Judgment and Permanent Injunction.

## VI. Conclusion and Prayer for Relief

53.     Plaintiffs hereby respectfully request that this Honorable Court enter the attached Final Judgment and Permanent Injunction awarding Plaintiffs the amounts set forth therein, along with the injunctive relief set forth therein, in favor of Plaintiffs and against the Remaining Defendants for the Remaining Defendants' misappropriation of Plaintiffs' Trade Secrets, infringement of Plaintiffs' Trademarks, and unfair competition.


DATED: April 30, 2025                          Respectfully,

                                               */s/ Lema Mousilli*
                                               Lema Mousilli
                                               Attorney-In-Charge
                                               Texas Bar No. 24056016
                                               Federal Bar No. 1358290
                                               **Mousilli Law, PLLC**
                                               11807 Westheimer Road
                                               Suite 550, PMB 624
                                               Houston, TX 77077
                                               Tel: (281) 305-9313
                                               lema@mousillilaw.com
                                               service@mousillilaw.com

                                               ATTORNEYS FOR PLAINTIFFS,
                                               WELL CELL GLOBAL LLC;
                                               WELL CELL SUPPORT LLC; AND
                                               DIABETES RELIEF LLC

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on all parties and counsel of record, pursuant to the District's ECF service rules on **April 30, 2025,** *via electronic filing system* or U.S. mail on the following:

**Marc Pierre Desgraves, IV**
9541 Pagosa Street
Commerce City, CO 80022
972-743-3935
Email: mdesgraves@insulinichawaii.com
PRO SE

**Charles Alexander Elliott**
1360 S. Berentania St. Suite 500m
Honolulu, HI 96816
808-778-6518
Email: celliot@insulinichawaii.com
PRO SE

**Insulinic of Hawaii, LLC**
1360 S. Beretania Street
Suite 500
Honolulu, HI 98614
PRO SE

/s/ *Lema Mousilli*
Lema Mousilli